[No. 12065–4–I.  Division One.  June 24, 1985.]

ROBERTS, JACKSON & ASSOCIATES, *Appellant,* v.
PIER 66 CORPORATION, *Respondent.*

---

*Diamond & Sylvester* and *John T. Petrie,* for appellant.

*Davis, Wright, Todd, Riese & Jones* and *William D. Rives,* for respondent.

RINGOLD, J.— Roberts, Jackson & Associates, Inc. (Roberts) appeals the amount of the trial court's award in its favor. Roberts argues that the trial court undervalued the total sale price of Pier 66 Corporation (Pier 66) stock in assessing Roberts' brokerage commission, and assigns error to the determinations made by the trial court concerning interest.

Pier 66 is a corporation formed to develop certain commercial waterfront property in Seattle. In October 1980, Monte H. Johnson, the president of Pier 66, and two representatives of Roberts, executed a brokerage commission agreement. The agreement drafted by a representative of Roberts, and amended with an interlineation by Johnson provides:

COMMISSION AGREEMENT

* * *

In consideration for real estate negotiation services to be per-
formed by ROBERTS, JACKSON & ASSOCIATES, INC., acting by and through
its associates, Charles A. Jackson and Robert A. Swaffield, the
undersigned Principal does hereby grant unto said Agents, the right
to sell a designated interest in the project commonly known as:
The Pier 66 Re-Development Project, to C.H.G. INTERNATIONAL, INC.
and/or affiliates.

The undersigned agrees to pay ROBERTS, JACKSON & ASSOCIATES, INC. a
real estate commission as follows, in cash ~~at time of closing~~: *pro ratio as received by Sellers*

   $100,000 (One hundred thousand dollars) if a 50%
            interest is sold to the above named client.
                        OR......
   5% of the total purchase price is 100% interest is
   sold to the above client.

   NOTE:  Any interest sold which varies from the above will
          be compensated to Roberts, Jackson & Associates,
          Inc. on the same basis and in line with the pro-
          portion of the percentage of interest sold.

                                   PIER 66 CORPORATION

                                   BY: _____
Acknowledged and Agreed            Its: _____
to this 3rd day of
_____, 1980.               Date:   10-3-80

ROBERTS, JACKSON & ASSOCIATES, INC.

By: _____
    Charles A. Jackson, Designated
    Broker

By: _____
    Robert A. Swaffield

Roberts produced an interested buyer, leading to a purchase agreement between the owners of Pier 66 and Bell Street Terminal, Inc. (Bell). Because of tax and leasehold consequences, the stock of the corporation was sold to Bell rather than the real estate. The final purchase agreement called for a $200,000 payment soon after closing, assumption of $366,064 in liabilities, and payments on two $1 million notes with interest at 8 percent per annum extending through January 1991.

The trial court excluded the assumption of liabilities from the purchase price and concluded that the total purchase price was $2,200,000. The trial court awarded Roberts a judgment for 5 percent of that amount, to be paid as principal payments were received by the former stockholders of Pier 66. The trial court also refused to award Roberts interest on its deferred commission payments.

> *Should the $366,064 in liabilities assumed by the buyers of Pier 66 be considered part of the total purchase price?*

Roberts contends that the total purchase price includes all consideration flowing from the buyer to the seller and should include the buyer's assumption of the $366,064 in liabilities. Pier 66 responds that the trial court's finding that the purchase price was $2,200,000 is supported by substantial evidence, and must therefore be upheld.

█ The general rule is that the interpretation of a contract is a question of law. *Kelly v. Aetna Cas. & Sur. Co.,* 100 Wn.2d 401, 407, 670 P.2d 267 (1983). Contracts should be construed to reflect the intent of the parties. *Corbray v. Stevenson,* 98 Wn.2d 410, 415, 656 P.2d 473 (1982). "The intention of parties to a written contract is normally to be ascertained largely from the language of the contract." *In re Estates of Wahl,* 99 Wn.2d 828, 831, 664 P.2d 1250 (1983).

The commission agreement states that Roberts will receive 5 percent of the "total purchase price." There is no evidentiary dispute between the parties on this issue.

"Absent disputed facts, the construction or legal effect of a contract is determined by the court as a matter of law." *Yeats v. Estate of Yeats*, 90 Wn.2d 201, 204, 580 P.2d 617 (1978). It is solely a legal question whether the assumption of liabilities should be included in the purchase price.

On December 9, 1980, the buyers had advanced $20,000 to purchase the trolley stop. Bell also tendered $40,000 to the sellers on January 9, 1981, for payment by Pier 66 to trade creditors. At closing, Pier 66 owed $306,064 to the seller shareholders, and Bell paid $200,000 for the purpose of paying a portion of these obligations. The balance of the liabilities was to be paid within 30 days after issuance of a foundation permit or July 15, 1981, whichever was sooner.

The president of one of the purchasing corporations testified that the reason Pier 66's stock was purchased, rather than the real property, was to reduce tax liability. Johnson, the president of Pier 66, also testified that the assumption of the liabilities was a down payment on the stock and that this form of payment was chosen because of tax consequences.

Whether the buyer purchased the seller's interest in the real property or the stock of the corporation as a substitute for the real property is immaterial. When faced with the same issue, the District of Columbia Court of Appeals held that assumption of a corporation's liabilities should be included in the purchase price. The court's reasoning in *Blanken & Blanken Invs., Inc. v. Keg, Inc.*, 383 A.2d 1076 (D.C. 1978) is persuasive. In *Keg* the court concluded that the sale would not have been consummated without the buyer's agreement to assume the liabilities. The court opined that the gain to the seller "was as real and substantial as if the money had been paid it and then paid over by it to its creditors." *Keg*, at 1077.

The contract between the seller and purchaser of Pier 66, and the testimony at trial, demonstrates that the assumption of the liabilities was considered part of the purchase price by the parties involved. Whether the buyers assumed payment of the corporate liabilities, or required the sellers

to satisfy the corporate obligations, the total purchase price was $2,566,064. The trial court erred by not awarding Roberts 5 percent of the $366,064 in liabilities assumed by the purchasers.

*Did the trial court err by not awarding interest on Roberts' deferred commission?*

Roberts argues that the provision in the commission agreement requiring payment "pro ratio as received by sellers" is ambiguous and that it must be construed against Pier 66, because it was drafted by Johnson. Roberts also contends that this provision mandates Roberts receive 8 percent interest on the deferred commission because that was the rate received by the sellers of Pier 66 on deferred payments.

In *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254, 510 P.2d 221 (1973), the Supreme Court stated:

> Determination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.

If, after viewing the contract in this manner, the intent of the parties can be determined, there is no need to resort to the rule that ambiguity be resolved against the drafter. *See Jacoby v. Grays Harbor Chair & Mfg. Co.*, 77 Wn.2d 911, 468 P.2d 666 (1970).

Both parties' expert witnesses indicated that the customary practice among brokers is that no interest is received on commissions unless specifically provided for in the commission agreement. Johnson's disputed interlineation changed the time Roberts' commission was due from "at the time of closing" to "pro ratio as received by sellers." This was not an agreement to give Roberts interest on its commission. The trial court correctly ruled, "If it was intended that the commissions would be deferred with interest, it was the responsibility of the plaintiff after the defendant's interlin-

eation and alteration of the commission agreement to have included a specific provision regarding interest."

Roberts also challenges the trial court's disallowance of interest on the deferred commission payments by claiming RCW 19.52.010 applies. Former RCW 19.52.010 provides:

> Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of twelve percent per annum where no different rate is agreed to in writing between the parties. The discounting of commercial paper, where the borrower makes himself liable as maker, guarantor, or indorser, shall be considered as a loan for the purposes of this chapter.

■ Roberts asserts that the deferred commission payments constitutes a loan to the sellers. The case law does not support this contention. The Supreme Court held in *Washington Fish & Oyster Co. v. G.P. Halferty & Co.*, 44 Wn.2d 646, 661, 269 P.2d 806 (1954), that: "It is the law in this state that, in the absence of any contract to the contrary, interest on money becomes due and payable only when the money becomes due and payable." As discussed previously, the commission agreement does not specify that interest be paid. Roberts has no right to interest on the commissions related to the deferred payments by the buyers, because those commissions were not yet due. The agreement to accept deferred commissions is not a forbearance or loan of money.

We modify the judgment by awarding Roberts 5 percent of $366,064 increasing the amount awarded by $18,303.20. Roberts having substantially prevailed is entitled to recover costs.

SCHOLFIELD, A.C.J., and HOPP, J. Pro Tem., concur.

Review denied by Supreme Court September 20, 1985.