[No. 13559–7–I.   Division One.   December 9, 1985.]

SEATTLE–FIRST NATIONAL BANK, *as Trustee, Respondent,* v. WESTLAKE PARK ASSOCIATES, *Appellant.*

*Dempcy & Braley, P.S.,* and *Birney N. Dempcy,* for appellant.

*Williams, Lanza, Kastner & Gibbs* and *P. Arley Harrel,* for respondent.

RINGOLD, J.—Seattle–First National Bank brought an action for declaratory judgment against Westlake Park Associates to resolve the meaning of a lease. The trial court entered summary judgment for Seattle–First National Bank (Sea–First) and Westlake appeals.

Westlake acquired a lessee's interest in a 99–year leasehold of the property commonly known as the Mayflower Park Hotel, Seattle, Washington. Sea–First is successor to the lessor's interest in the lease. The lease was entered into on September 16, 1926, and had been amended in 1959 and 1981.

The specific provision of the lease that is contested provides in part:

> Thirty–Second: That if . . . said leasehold estate be taken from the Lessee by process of law, proceedings in bankruptcy, insolvency, receivership or other involuntary method, then and in any such case this lease shall be void, terminated and cancelled, at the Lessor's option. . .

The dispute at the trial court was whether this language applied to a mortgage foreclosure or a deed of trust sale.

There was no parol evidence presented to the trial court concerning the intention of the parties in 1926, when the leasehold was created. A prior holder of the lessor's interest gave a written consent to mortgage foreclosure proceedings in 1973. That consent agreement did not waive or amend the provisions of the lease, and it was executed without the parties concluding whether it was necessary.

Westlake recognized that the above lease provision might be interpreted as applicable to mortgage foreclosures and deed of trust sales, and contacted Sea–First to propose an amendment to the lease. Westlake later submitted the interpretation of the lease to arbitration. Before the requisite number of arbitrators was impaneled, Sea–First filed this lawsuit. Neither party contests the submission of this dispute to the courts.

This case is before us on appeal from a summary judgment; therefore, this court engages in the same inquiry as the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 656 P.2d 1030 (1982). Summary judgment is proper if there are no genuine issues as to any material fact and the moving party is entitled to prevail as a matter of law. CR 56(c); *Blenheim v. Dawson & Hall, Ltd.,* 35 Wn. App. 435, 667 P.2d 125 (1983). There are no disputed facts in the case sub judice, and the legal effect of the lease is to be determined by this court as a matter of law. *See Yeats v. Estate of Yeats,* 90 Wn.2d 201, 204, 580 P.2d 617 (1978).

## ESTOPPEL

Sea–First contends that Westlake acknowledged that the lease gave the lessor the option to terminate the lessee's interest upon a mortgage foreclosure, and that Westlake should now be estopped from taking a different position. *See Arnold v. Melani,* 75 Wn.2d 143, 147, 437 P.2d 908, 449 P.2d 800, 450 P.2d 815 (1968).

In *Arnold,* at 147, the Supreme Court stated the general principle "that a man shall not be permitted to

deny what he has once solemnly acknowledged". To apply equitable estoppel to a given case, the court required three elements be present:

> (1) An admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

*Arnold,* at 147.

None of these elements have been satisfied in the case at bench. The letters by Westlake always stressed their belief that there was an ambiguity in the lease and that the lease agreement contemplated mortgage foreclosures without triggering the lessor's option to terminate the lessee's interest. The proposed amendment was an attempt to settle any dispute outside of court, and there is no evidence Sea–First relied on this proposal to its detriment. Equitable estoppel is inapplicable to this case. *See Arnold.*

## THE LEASE

Westlake contends that, when the lease agreement is read as a whole, there is an intent to exclude mortgage foreclosures from provision 32, because other provisions envision mortgage foreclosures occurring without termination of the lessee's interest. Additionally, Westlake claims that the disputed terms of provision 32 are general language and should be limited in scope to situations specifically covered, *i.e.,* assignments for the benefit of creditors, bankruptcy proceedings, receivership and insolvency. Even if mortgage foreclosures are covered by provision 32, Westlake argues that deed of trust sales are not, because the latter are not a process of law or an involuntary taking.

■ "[W]hat controls in a lease is the intent of the parties at the time of its execution, and the plain meaning of the language used." *Washington Hydroculture, Inc. v. Payne,* 96 Wn.2d 322, 328, 635 P.2d 138 (1981). Leases are contracts, as well as conveyances, and as such the rules of construction that apply to contracts also apply to leases.

"The intention of parties to a written contract is normally to be ascertained largely from the language of the contract." *In re Estates of Wahl,* 99 Wn.2d 828, 831, 664 P.2d 1250 (1983). This is especially true of the present case, because there is no parol evidence of the parties' intent at the time they executed the lease.

### READING THE LEASE AS A WHOLE

"Determination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole . . ." *Stender v. Twin City Foods, Inc.,* 82 Wn.2d 250, 254, 510 P.2d 221 (1973); *Roberts, Jackson & Assocs. v. Pier 66 Corp.,* 41 Wn. App. 64, 69, 702 P.2d 137 (1985). In the present case, lease provision 6 expressly places the lessor's interest paramount to "any mortgage which the Lessee may execute thereon. . . ." Lease provision 18 requires the lessee to erect a building worth at least $110,000 on the leased property. The 1981 amendment to the lease provides that fire insurance may be payable to "any mortgagee of either the Lessor's or the Lessee's interest in the premises . . ." These provisions establish that the original parties intended that the lessee's interest be mortgageable.

Construing provision 32 to apply to mortgage foreclosures does not preclude a lessee from mortgaging the lessee's interest. The language permitting termination of the lessee's interest in provision 32 is optional. A lessor may permit a mortgage foreclosure to proceed uninhibited. The record discloses at least one instance in which a lessor gave an express written agreement to a mortgage foreclosure on the lessee's interest.

Lease section 32 also states that:

[I]f at the time the Lessor elects to terminate this lease . . . there be outstanding any mortgage on the leasehold estate, the mortgagee shall have the right to retain possession of the demised premises upon paying the rent and other charges and performing the terms, conditions and covenants to be performed by the Lessee until such mortgage shall have been fully paid and satisfied, but not beyond or later than the date upon which this lease by its

terms expires, and when said mortgage indebtedness shall have been fully paid, or at the expiration of the term of this lease, the said premises shall revert absolutely to the Lessor.

This language specifically protects a mortgagee of the lessee's interest if the lessor exercises the power of termination.

Reading the lease as a whole does not support Westlake's view that the termination power cannot apply to mortgage foreclosures. The other provisions of the lease are not inconsistent with the interpretations urged either by Sea–First or Westlake.

### GENERAL AND SPECIFIC LANGUAGE

"Courts can neither disregard contract language which the parties have employed nor revise the contract under a theory of construing it." *Wagner v. Wagner,* 95 Wn.2d 94, 101, 621 P.2d 1279 (1980). An interpretation which gives effect to all of the words in a contract provision is favored over one which renders some of the language meaningless or ineffective. *Wagner,* at 101.

Westlake argues that this court should apply the rule of the Restatement of Contracts § 236(c) (1932)[1] that when general and specific language are inconsistent, the specific language qualifies the more general. The language of the contract, however, is not in conflict. Westlake then analogizes to the doctrine of ejusdem generis, a rule of statutory construction, which states that "when the specific enumerations of power are followed by words granting general power, the specific enumerations govern the character or nature of the subject matter to be included within the words granting general powers." *In re Seattle,* 96 Wn.2d 616, 630, 638 P.2d 549 (1981).

Applying this rule to the present case, the words "process of law" and "other involuntary method" should be construed as applying to situations similar in character to pro-

---

[1]Restatement (Second) of Contracts § 203(c) (1981) now states: "(c) specific terms and exact terms are given greater weight than general language;"

ceedings in bankruptcy, insolvency, receivership, and assignments for the benefit of creditors. Application of the rule does not mean that the right of termination is restricted to only the specific powers, because that would render the general language superfluous. *See In re Seattle,* at 630. The words "process of law" and "other involuntary method" apply to mortgage foreclosures.

## DEED OF TRUST SALES

The parties also dispute whether deed of trust sales fall within the plain meaning of "process of law" or "other involuntary method" as used in the lease agreement.

The Supreme Court has held that nonjudicial foreclosures are not subject to the due process requirements of the Fourteenth Amendment, because there is no state action. *Kennebec, Inc. v. Bank of the West,* 88 Wn.2d 718, 565 P.2d 812 (1977). Westlake argues that even though deed of trust sales are subject to RCW 61.24 they are not process of law because of the holding in *Kennebec.*[2]

■ If there is a question whether "process of law" includes deed of trust sales, it would appear they are as involuntary as mortgage foreclosures. The Supreme Court of Texas was presented with the issue of whether deed of trust sales were voluntary in *Draper v. Gochman,* 400 S.W.2d 545 (Tex. 1966). In *Draper,* a lease specified that if the lessor desired to sell or dispose of his interest, the lessee would have the right of first refusal to purchase. Thereafter, the lessor borrowed money and executed a deed of trust to secure the debt. When the lessor defaulted, his interest was sold under the deed of trust. The court held that a deed of trust sale was involuntary and the lease provision granted a right of first refusal only when the lessor had voluntarily desired to sell. *Draper,* at 548.

"A court cannot, based upon general considerations of

---

[2]Contrary to Westlake's assertion, the Supreme Court in *Kennebec, Inc. v. Bank of the West,* 88 Wn.2d 718, 565 P.2d 812 (1977) did not hold that deed of trust sales were voluntary. The court held only that RCW 61.24 did not invoke the coercive power of the State.

abstract justice, make a contract for parties which they did not make for themselves." *Wagner,* at 104. The trial court correctly held that lease provision 32 applied to mortgage foreclosures and deed of trust sales.

We affirm.

GROSSE and WEBSTER, JJ., concur.

Reconsideration denied January 9, 1986.

Review denied by Supreme Court March 21, 1986.