[No. 31218-2-II. Division Two. January 4, 2005.]

FOREST MARKETING ENTERPRISES, INC., *Appellant*, v. THE DEPARTMENT OF NATURAL RESOURCES, *Respondent*.

*Philip A. Talmadge* (of *Talmadge Law Group, P.L.L.C.*) and *Christopher J. Knapp* (of *Anderson Hunter Law Firm*), for appellant.

*Christine O. Gregoire, Attorney General*, and *Philip M. Ferester, Assistant*, for respondent.

¶1 ARMSTRONG, J. — Forest Marketing Enterprises, Inc., (Formark) appeals summary judgment in favor of the Department of Natural Resources (DNR). When Formark breached its agreement to purchase timber from DNR, DNR sought liquidated damages under the contract. DNR and Formark disagreed over whether Formark was entitled to a credit against liquidated damages for Formark's statutorily required initial deposit. Formark filed this declaratory judgment action to resolve the issue, and the trial court granted DNR's summary judgment motion, ruling that because the deposit was subtracted as part of the liquidated damages formula, Formark was given a credit for it. We agree and, therefore, affirm.

## FACTS

¶2 In January 2000, Formark agreed to pay DNR $1.8 million to harvest timber on certain state land (the County Line timber sale). The contract required Formark to pay an initial deposit of $172,900.

¶3 Formark breached the contract when it stopped harvesting with, according to contract value, $1,013,000 worth of timber left standing. The timber market had declined, and DNR estimated the market value of the unharvested timber at $662,440.[1] Thus, DNR estimates its actual damages were approximately $350,000 by subtracting $662,440 (estimated resale value) from $1,013,000 (contract value). Formark offered no evidence to contradict DNR's damage estimates.

¶4 The contract contained a liquidated damages formula, which produced a loss figure of $184,150; DNR arrived at this figure by taking 35 percent of the unpaid portion of the contract price, subtracting the initial deposit, and adding other charges and administrative fees. When DNR notified Formark that it owed an additional $184,150, Formark tendered $11,250, claiming that it was entitled to offset its initial deposit against the liquidated damages. DNR rejected the $11,250 tender, arguing that it was entitled to the full $184,150 because the "initial deposit" was already subtracted in DNR's liquidated damages calculation.

¶5 Formark sued for declaratory relief as to DNR's damages under the contract. DNR answered and counterclaimed for damages of $184,150 plus 12 percent interest per annum until the full liquidated damages amount is paid.

¶6 Both parties moved for summary judgment. The trial court granted DNR's motion, ruling that "[t]he offset for the

---

[1] DNR recognizes that when it originally made this estimate, it made a mathematical error. The resale price it calculated should have equaled $622,440. But, DNR agrees to continue using the number $662,440 as it is more favorable to Formark, which claims that the damages are punitive.

forfeiture of Plaintiff's initial deposit was taken into account in the Liquidated Damage value formula in clause D-022 of the Contract." Clerk's Papers (CP) at 124.

## ANALYSIS

¶7 Formark and DNR agree that the contract's liquidated damages formula produced a figure of $184,150. The formula operates as follows:

LD= .35V-ID+C+A

Where:

LD= Liquidated Damage value.

V= . . . the unpaid portion of the contract bid price at the time of breach.

ID= Initial deposit paid at date of contract that has not been applied to timber payments.

C= Charges assessed for contract requirements completed prior to breach of contract but not paid for.

A= Administrative Fee = $2,500.

CP at 74. Formark argues that under a correct reading of RCW 79.01.132 and the contract, it can subtract the initial deposit from the $184,150 as an outstanding obligation under the contract. DNR argues that the liquidated damages formula anticipated the deposit forfeiture by including an offset to the actual damages under RCW 79.01.132. We agree with DNR.

## I. Standard of Review

¶8 We review a summary judgment de novo. *See Retired Pub. Employees Council of Wash. v. Charles*, 148 Wn.2d 602, 612, 62 P.3d 470 (2003). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Charles*, 148 Wn.2d at 612. We consider all facts submitted and all

reasonable inferences from them in the light most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

## II. The Law

### A. RCW 79.01.132 and County Line Contract

■ ¶9 The public lands act, chapter 79.01 RCW,[2] governs the contractual relationship between DNR and Formark, including the sale process and the terms of the contract. DNR may sell state-owned timber by public auction or sealed bid. RCW 79.01.200. For auction sales, as in this case, RCW 79.01.204 requires a successful bidder to provide the deposit specified in the notice of sale. And under the statute, DNR must hold the initial deposit as security for the purchaser's contract performance.

¶10 The contract between DNR and Formark incorporates former RCW 79.01.132 (2000) by reference, stating: "Purchaser paid $172,900.00 initial deposit, which will be maintained pursuant to [former] RCW 79.01.132." CP at 69. The parties agree that the initial contract deposit was a performance security fund.

¶11 Paragraphs D-010 and D-022 of the contract set forth the parties' liquidated damages agreement. D-010 states in part, "[t]hese payments are agreed to as liquidated damages and not as penalties. They are reasonable estimates of [the] harm to the State which will be caused by Purchaser's breach." CP at 73. Paragraph D-022 states in part:

> The Purchaser's failure to perform disrupts the State's management plans, the actual cost of which is difficult to assess. A resale involves additional time and expense and is not an adequate remedy. Therefore, the Purchaser agrees to pay the State as liquidated damages a sum calculated using the [liquidated damages] formula.

CP at 74.

---

[2] Chapter 79.01 RCW was largely repealed and recodified in various parts of Title 79 RCW. Laws of 2003, ch. 334. RCW 79.01.132 was repealed. Laws of 2003, ch. 334, § 551. Its provisions were dispersed throughout Title 79 RCW.

## B. Interpretation of Statute and Contract

 ¶12 We construe contracts to reflect the parties' intent, and give the contract language its ordinary meaning. *See Corbray v. Stevenson*, 98 Wn.2d 410, 415, 656 P.2d 473 (1982); *see In re Estates of Wahl*, 99 Wn.2d 828, 831, 664 P.2d 1250 (1983). Similarly, when construing statutes, we seek to determine and give effect to the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). If a statute is unambiguous, we look to its language only in determining the legislature's intent. *See Cherry v. Mun. of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991).

¶13 We avoid interpreting statutes and contracts in ways that lead to absurd results. *Mortell v. State*, 118 Wn. App. 846, 849, 78 P.3d 197 (2003); *see Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 341, 738 P.2d 251 (1987); *Allstate Ins. Co. v. Hammonds*, 72 Wn. App. 664, 667, 865 P.2d 560 (1994) ("[w]hen a court examines a contract, it must read it 'as the average person would read it; it should be given a "practical and reasonable rather than a literal interpretation", and not a "strained or forced construction" leading to absurd results'") (quoting *Eurick*, 108 Wn. 2d at 341 (quoting *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn. 2d 901, 907, 726 P.2d 439 (1986))).

 ¶14 Formark suggests that we should construe this contract against DNR as the drafting party. Indeed, "[i]f the contract is ambiguous, the doubt created by the ambiguity will be resolved against the one who prepared the contract." *Felton v. Menan Starch Co.*, 66 Wn.2d 792, 797, 405 P.2d 585 (1965) (citing *Sunset Oil Co. v. Vertner*, 34 Wn.2d 268, 208 P.2d 906 (1949)). But we do not always construe ambiguous contracts against the drafter:

"[d]etermination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts

and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties."

If, after viewing the contract in this manner, the intent of the parties can be determined, there is no need to resort to the rule that ambiguity be resolved against the drafter.

*Roberts, Jackson & Assocs. v. Pier 66 Corp.*, 41 Wn. App. 64, 69, 702 P.2d 137 (1985) (quoting *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254, 510 P.2d 221 (1973)). Here, viewing the contract as a whole and in context, we can determine the parties' intent. Thus, we need not construe the contract against DNR.

## C. The Deposit Was Already Offset in Liquidated Damages Provision

¶15 Formark contends that "[a]s . . . written, the liquidated damages clause simply sets out a formula wherein the initial deposit is one of the numbers plugged into an equation." Appellant Br. at 12. It then reasons that former RCW 79.01.132 requires DNR to apply its initial deposit to Formark's unfulfilled contract obligations, and Formark reminds us that "nowhere in [the contract] does it state that DNR can keep the initial deposit *in addition to* [*or in place of* the] payment of liquidated damages." Appellant Br. at 11. We are not persuaded.

¶16 Reading the contract as a whole, the deposit and liquidated damages provisions are clear. We agree with Formark that DNR must hold the initial deposit according to the provisions of former RCW 79.01.132. This requires DNR to maintain initial deposits "until all contract obligations of the purchaser are satisfied" and to apply the deposit "for the performance or fulfillment of any remaining obligations of the purchaser under the sale contract." *See* former RCW 79.01.132. Thus, under the contract, DNR may apply the deposit to remaining contractual obligations. And that is what DNR did. It simply did so within the liquidated damages formula itself.

¶17 Although the contract's label for the formula may create some ambiguity, the ambiguity does not obscure the

formula's precise workings. The formula starts by taking 35 percent of the contract value for the unharvested timber. DNR uses 35 percent as an estimate of the level of market reduction that creates an incentive for timber purchasers to abandon such contracts. The resulting number plus some contract and administrative costs are DNR's best estimate of its actual loss if the purchaser defaults. DNR then deducts the purchaser's initial deposit and bills the defaulting purchaser for the balance. Thus, although the contract describes the formula as a calculation of liquidated damages, it actually combines that calculation with a payment provision, allowing DNR to credit Formark's deposit against the liquidated damage calculation.

¶18 Formark recognizes that the deposit deduction is not intended to be a part of any reasonable forecast of DNR's actual damages when it argues that the formula punishes Formark for defaulting. It argues that the "[t]otal sum of the initial deposit plus the amount set forth by the liquidated damages formula has no relation to the amount of damages actually sustained by DNR." Appellant Br. at 15-16. We agree. The security deposit plays no part in estimating DNR's actual damages. The initial deposit amount remains the same whether the purchaser defaults near the beginning or the end of performing the contract. Yet if we consider 35 percent of the contract value of the unharvested timber to be the actual liquidated damages formula, it reflects the reality that DNR will sustain less damages as the purchaser harvests more timber; 35 percent of the unharvested timber becomes a smaller amount as the purchaser harvests more trees.

¶19 If the deposit were actually a part of the liquidated damages calculation, the formula would lead to absurd results near the end of the harvest. For example, if 35 percent of the unharvested timber equaled or were less than the security deposit, Formark's contract interpretation would leave DNR with no damages: subtracting the deposit from an equal or lesser amount would reduce damages to zero. And, according to Formark, DNR would

still be obligated to refund Formark's initial deposit. But the formula would make sense in this scenario if we treat the deposit refund as a credit; DNR would take its loss, calculated at 35 percent of the unharvested timber, plus administrative costs from the damage deposit and refund the balance of the deposit to Formark.

¶20 We adopt the contract interpretation that best reflects the parties' reasonable expectations. *See Balfour, Guthrie & Co. v. Commercial Metals Co.*, 93 Wn.2d 199, 202, 607 P.2d 856, (1980) (quoting *Consol. Pac. Eng'g, Inc. v. Greater Anchorage Area Borough*, 563 P.2d 252 (Alaska 1977) ("In interpreting the contract, we look to the reasonable expectations of the parties.")); *see also Corbray*, 98 Wn.2d at 415 ("[w]ords should be given their ordinary meaning; contracts should be construed to reflect the intent of the parties; and courts, under the guise of construction or interpretation, should not make another or different contract for the parties" (citations omitted)). Accordingly, we hold that the contract formula plainly expresses the parties' intent that DNR would take the initial deposit deduction or credit as part of the liquidated damages formula. To read it as Formark urges would allow Formark to deduct the deposit twice—a result at odds with the contract's plain meaning.

### III. Liquidated Damages Are Not Punitive

¶21 Formark argues that DNR's interpretation of the contract results in a penalty because it represents "nearly twice" the amount of liquidated damages allowed under the contract, and the "total sum of the initial deposit plus the amount set forth by the liquidated damages formula has no relation to the amount of damages actually sustained by DNR." Appellant Br. at 16. We disagree.

¶22 Contracting parties may agree to liquidated damages "but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconve-

nience or nonfeasibility of otherwise obtaining an adequate remedy." RCW 62A.2-718(1). Further, "[a] term fixing unreasonably large liquidated damages is void as a penalty." RCW 62A.2-718(1). Nevertheless, "liquidated damage clauses are allowed where the amount involved is reasonable in the light of the circumstances of the case." *See* RCW 62A.2-718(1), Official cmt. 1. In addition, the transaction must be one "in which the actual damages can not be readily determined or are uncertain." 4B LARY LAWRENCE, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 2-719:59 (2004).

¶23 Formark's "nearly twice" argument assumes that the deposit deduction is intended to be a meaningful part of the formula estimating DNR's actual damages. We have already decided otherwise. And we have discussed how DNR arrived at the 35 percent multiplier of the contract value of the unharvested timber. Formark does not explain how this part of the formula is unrelated to DNR's actual damages. The part of the formula that is unrelated to DNR's actual damages is the deposit deduction. But as we have discussed, the contract treats this as a deduction or credit rather than a measure of DNR's actual damages. Considering the deposit as a deduction or credit, the liquidated damages formula is a reasonable forecast of DNR's actual loss.

¶24 But citing *Walter Implement, Inc. v. Focht*, 107 Wn.2d 553, 560, 730 P.2d 1340 (1987), Formark argues that the Supreme Court has held that a liquidated damage assessment of 20 percent is unreasonable. In *Walter*, the court held that a liquidated damages provision in a five-year equipment lease contract, which allowed recovery of 20 percent of the full lease price, did not "appear to have any relation, reasonable or not, to an estimation of damages." *Walter*, 107 Wn.2d at 560. The court reasoned that under the contractual formula, the liquidated damages "could vary from $2,161.26 (default in the fourth year) to $8,645.06 (default in the first year)." *Walter*, 107 Wn.2d at 560-61. Therefore, "the earlier the default the greater the

penalty although the equipment [would be] returned sooner resulting in less depreciation of [it]." *Walter*, 107 Wn.2d at 561. Formark argues that because the liquidated damages in this case approach 20 percent of the contract price, like the liquidated damages in *Walter*, they must also be unreasonable. But *Walter* does not stand for the broad proposition that liquidated damages of nearly 20 percent are always unreasonable. The test is not an arbitrary percentage of the contract price but whether the liquidated damage amount is a reasonable forecast of the injured party's actual loss. *Pettet v. Wonders*, 23 Wn. App. 795, 801, 599 P.2d 1297 (1979).

¶25 DNR explained that at the time of breach, Formark left $1,013,000 (contract value) in timber remaining on the site. The timber had an estimated retail value of $662,440.[3] Therefore, DNR's estimated actual damages are $350,560 (or $1,013,000 (remaining value) minus $662,440 (estimated resale value)). DNR's recovery under the liquidated damages formula was very close to its estimated actual damages. DNR also offered evidence that it is "extremely difficult to project actual damages on a timber contract at the time of contracting because of the fluctuation of timber prices driven by various market forces." CP at 114. In contrast, Formark offered no evidence as to the certainty of DNR's damages or the difference, if any, between DNR's actual damages and the liquidated damages. Thus, there is no issue of material fact as to whether the liquidated damages are punitive, and the trial court did not err in granting summary judgment in DNR's favor.

¶26 Affirmed.

BRIDGEWATER and VAN DEREN, JJ., concur.

---

[3] *See supra* note 1, about DNR's mathematical error.