# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ISLAND LANDMARKS, a Washington nonprofit corporation, | No. 69619-0-I |
| Appellant, | DIVISION ONE |
| v. | |
| MARY MATTHEWS; ELLE and KEN DE FRANG; NELSON HAPPY; and OWEN RYAN, | UNPUBLISHED |
| Respondents. | FILED: December 23, 2013 |

Cox, J. — Island Landmarks appeals the trial court's order granting the motion for summary judgment of Mary Matthews and the other named respondents ("the Matthews Group"). Also at issue is the order denying Island Landmarks' motion for partial summary judgment and the judgment dismissing the case with prejudice. Because there are genuine issues of material fact for trial, we affirm in part, reverse in part, and remand.

Island Landmarks is a Washington nonprofit corporation. One of its stated purposes is "[t]o promote historic preservation of architecture, landscape, and heritage of Vashon and Maury Islands . . . ." Membership is "open and unlimited" to all persons who have the same specified interest.

The corporation owns the Mukai Farm and Garden on Vashon Island. This property is a King County Historic Landmark. It is subject to a recorded

historic preservation easement dated July 20, 1999 in favor of the Washington State Department of Archeology and Historic Preservation.

This action for declaratory and other relief arises from competing claims to control the corporation. The "Kritzman Group," led by Ellen Kritzman—a former board member of the nonprofit—commenced this action in the name of Island Landmarks. This followed a special meeting on June 4, 2012 that the Kritzman Group convened after sending its own notice. The actions at that meeting included voting out the board, composed of the Matthews Group, and electing a new board. The Matthews Group is the other group competing for control of this nonprofit.

The Matthews Group moved for summary judgment. It claimed, among other things, that the Kritzman Group's attempt to remove the directors was invalid because it failed to give proper notice of the special meeting where those attending voted out the then existing board. The Matthews Group sought dismissal, with prejudice, of the action.

Island Landmarks moved for partial summary judgment, first arguing that the Kritzman Group was the lawful governing board of the corporation. It also argued, in the alternative, that the Matthews Group must be judicially removed due to alleged acts of malfeasance pursuant to RCW 24.03.1031. This latter alternative appears to have been based on the assumption that Island Landmarks' then pending motion to amend the complaint would be granted. But it never was.

At a hearing on these motions, the trial court declined to address Island Landmarks' motion to amend the complaint. Instead, it granted the Matthews Group's motion for summary judgment. That same day, the court entered two orders: an order granting the Matthews Group's motion for summary judgment, and an order denying Island Landmarks' motion for partial summary judgment.

The court later entered a judgment dismissing this action with prejudice. Island Landmarks appeals.

## BYLAWS OF ISLAND LANDMARKS

Island Landmarks argues that the trial court erred when it granted the Matthews Group's motion for summary judgment. Specifically, it argues that the court's reading of the corporation's bylaws was incorrect. We agree and also hold that there are genuine issues of material fact for trial.

Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[1] The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party.[2] We review de novo the grant or denial of a summary judgment motion.[3]

The Washington Nonprofit Corporation Act, chapter 24.03 RCW, states that "bylaws may contain any provisions for the regulation and management of

---

[1] CR 56(c).

[2] Yakima Fruit & Cold Storage Co. v. Cent. Heating & Plumbing Co., 81 Wn.2d 528, 530, 503 P.2d 108 (1972).

[3] Tiffany Family Trust Corp. v. City of Kent, 155 Wn.2d 225, 230, 119 P.3d 325 (2005).

the affairs of a corporation not inconsistent with law or the articles of incorporation."[4] Bylaws are the internal laws of a corporation, and they have the effect of a statute.[5]

"The governing documents of a corporation are interpreted in accordance with accepted rules of contract interpretation."[6] The "'touchstone of contract interpretation is the parties' intent.'"[7] "Washington courts follow the objective manifestation theory of contracts, imputing an intention corresponding to the reasonable meaning of the words used."[8] "An interpretation which gives effect to all of the words in a contract provision is favored over one which renders some of the language meaningless or ineffective."[9] The court will not read ambiguity into a contract "'where it can reasonably be avoided.'"[10]

---

[4] RCW 24.03.070.

[5] State v. Goldsmith Dredging Co., 150 Wash. 366, 369, 273 P. 196 (1928).

[6] Roats v Blakely Island Maint. Com'n, Inc., 169 Wn. App. 263, 273-74, 279 P.3d 943 (2012).

[7] Realm, Inc. v. City of Olympia, 168 Wn. App. 1, 4, 277 P.3d 679 (2012) (quoting Durand v. HIMC Corp., 151 Wn. App. 818, 829, 214 P.3d 189 (2009)), review denied, 175 Wn.2d 1015.

[8] Id. at 5.

[9] Seattle-First Nat. Bank v. Westlake Park Assocs., 42 Wn. App. 269, 274, 711 P.2d 361 (1985).

[10] Mayer v. Pierce County Med. Bureau, Inc., 80 Wn. App. 416, 421, 909 P.2d 1323 (1995) (quoting McGary v. Westlake Investors, 99 Wn.2d 280, 285, 661 P.2d 971 (1983)).

Summary judgment as to a contract interpretation "is not proper if the parties' written contract, viewed in light of the parties' other objective manifestations, has two or more reasonable but competing meanings."[11] If two or more meanings of the contract are reasonable, a question of fact exists.[12] "Interpretation of a contract provision is a question of law only when (1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence."[13]

## CR 56 (e)

In passing, the Matthews Group argues that we should disregard a number of declarations attached to Island Landmarks' motion for partial summary judgment that it moved to strike below. It contends that the declarations "were not before the trial court and are also irrelevant to the issues raised in this appeal." Nevertheless, the trial court implicitly denied this motion by expressly stating in its order that the declarations were among the items considered when it ruled on the motion. Because the Matthews Group did not cross-appeal this adverse ruling, we do not further address this argument. These declarations are before us in our de novo review.

---

[11] Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 83, 60 P.3d 1245 (2003).

[12] Hansen v. Transworld Wireless TV-Spokane, Inc., 111 Wn. App. 361, 375, 44 P.3d 929 (2002) (quoting Interstate Prod. Credit Ass'n v. MacHugh, 90 Wn. App. 650, 654, 953 P.2d 812 (1998)).

[13] Go2Net, Inc., 115 Wn. App. at 85 (quoting Tanner Elec. Co-op. v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674, 911 P.2d 1301 (1996)).

*Notice of Meetings*

Island Landmarks argues that the trial court misinterpreted § 2.7 of the bylaws. The trial court concluded that the Kritzman Group was first required to give its written request for notice of a special meeting to the secretary, so that the secretary could give notice to the members.[14] Island Landmarks further argues that the bylaws allowed the Kritzman Group to give notice of the special meeting on its own.[15]

The bylaws contain the following provisions relevant to calling meetings. Bylaw § 2.5 specifies who may call special meetings:

> **2.5 Special Meetings.** The President, any two (2) members of the Board, or *not less than ten percent (10%) of the members entitled to vote at such meeting*, may call special meetings of the members for any purpose.[16]

Another provision, § 2.7, discusses the procedure for giving notice of either annual or special meetings:

> **2.7 Notice of Meetings.** Written notice of any annual or any special meeting of the members stating the place, day, and hour of the meeting—and in case of a special meeting, the purpose or purposes for which the meeting is called—*shall be given by the secretary or persons authorized to call the meeting to each member of record entitled to vote at the meeting.* Such notice shall be given not less than ten (10) nor more than fifty (50) days prior to the date of the meeting. *At any time, upon the written request of not more than ten percent (10%) of the members entitled to vote at the meeting, it shall be the duty of the Secretary to give notice of a special meeting* of members to be held at such date, time and place as the secretary may fix, not less than ten nor more than thirty-five days after receipt of such written

---

[14] Clerk's Papers at 475; Report of Proceedings (Nov. 1, 2012) at 32.

[15] Appellant's Opening Brief at 15-26; Appellant's Reply Brief at 3-8.

[16] Clerk's Papers at 44 (emphasis added).

6

request, and if the Secretary shall neglect or refuse to issue such notice, the person or persons making the request may do so and may fix the date, tome [sic] and place for such meeting.[17]

The plain language of § 2.5 specifies that three separate entities are authorized to call a special meeting: (1) the President, (2) any two members of the Board, or (3) "not less than ten percent (10%) of the members entitled to vote at such meeting." Then, the first sentence of § 2.7 plainly states that notice of either an annual or *special meeting* "shall be given by the secretary *or persons authorized to call the meeting* . . . ."[18]

Plainly, the secretary of the corporation is only one entity authorized to give notice of a special meeting. It is equally plain that another entity so authorized is "persons authorized to call the meeting." The term "persons authorized to call the meeting" is expressly defined by § 2.5 and includes "not less than ten percent (10%) of the members entitled to vote at such [special] meeting."

Here, the trial court concluded that the bylaws required members to first make a written request to the secretary, so that the secretary could then give notice of a special meeting.[19] In doing so, it appears that the trial court focused only on the second half of § 2.7.[20] That portion states:

---

[17] Id. (emphasis added).

[18] Id. (emphasis added).

[19] Clerk's Papers at 475; Report of Proceedings (Nov. 1, 2012) at 32.

[20] Report of Proceedings (Nov. 1, 2012) at 30-36.

> At any time, upon ***the written request*** of ***not more than ten percent (10%) of the members entitled to vote at the meeting***, it shall be the duty of the Secretary to give notice of a special meeting of members to be held at such date, time and place as the secretary may fix . . . ."[21]

The only reasonable reading of this portion of § 2.7 is that a written request to the secretary to give notice of a special meeting only applies where "***not more*** than ten percent (10%) of the members entitled to vote at the [special] meeting" request such a meeting. Where, as here, allegedly ***more*** than ten percent of the members entitled to vote at such meeting called for the meeting, this portion of § 2.7 does not control.

This reading is consistent with the plain language of this portion of § 2.7. It also best harmonizes with a proper reading of § 2.5 and with the first half of § 2.7, which provide for entities other than the secretary to call and provide notice of special meetings. Because "not less than ten percent (10%) of the members entitled to vote at such meeting" allegedly called this special meeting, the court relied on the incorrect portion of § 2.7 in making its decision.

In sum, the trial court erroneously granted summary judgment in favor of the Matthews Group. Moreover, there are genuine issues of material fact that exist even if the trial court had relied on the correct portion of § 2.7. These issues are discussed in greater detail later in this opinion.

The Matthews Group makes a number of arguments to support the trial court's decision. None are persuasive.

---

[21] Clerk's Papers at 44 (emphasis added).

First, the Matthews Group purports to quote § 2.7 and argues "the second part of bylaw 2.7 specifically applies to notices to be sent by 'ten percent of the members entitled to vote at the meeting.'" But the Matthews Group selectively quotes this portion. As discussed above, § 2.7 states that this applies to "*not more* than ten percent (10%) of the members entitled to vote at the meeting."[22] This portion of § 2.7 is a ceiling that ranges from one member to ten percent of members and is broader than the "ten percent" that is the focus of the Matthews Group's argument. Importantly, this language is also distinct from "*not less* than ten percent," the portion of § 2.5 which is a floor for the required percentage of members authorized to call a meeting.[23] The Matthews Group's attempt to show that this portion of § 2.7 applies to the same "ten percent" identified by § 2.5 is simply misleading

Second, the Matthews Group argues that the Kritzman Group's interpretation does not make sense because "11 members could designate 11 places, times and dates of their own choosing."[24] But this argument is not logical. Under § 2.5, in order to call a special meeting, there must be at least ten percent of members entitled to vote at the special meeting. This percentage, as a whole, is one of three entities expressly authorized by § 2.5 to call a special meeting. Thus, the Matthews Group's hypothetical is inconsistent with the plain words of this section.

---

[22] Clerk's Papers at 44 (emphasis added).

[23] Id. (emphasis added).

[24] Respondents' Brief at 18.

Third, the Matthews Group argues that there "is no optionality about the requirements of bylaw 2.7, which provides in part: '. . . it **shall** be the duty of the Secretary to give notice.'"[25] But, as discussed above, this portion of § 2.7 is inapplicable to this case. It is analytically irrelevant what duty the secretary has for the portion of § 2.7 that does not apply in this case.

Fourth, the Matthews Group argues that the members were not "persons authorized to call the meeting" under § 2.7, because, pursuant to § 2.5, the only "persons" authorized to call a special meeting are the President and any two board members.[26] Thus, it contends that "not less than ten percent (10%) of the members entitled to vote" does not fall within the category of "persons." But this strained interpretation is wholly unreasonable. As discussed above, § 2.5 grants three separate entities the authority to call a meeting—(1) the President; (2) two members of the board; and (3) not less than ten percent of the members entitled to vote. Use of the term "person" in § 2.7 cannot reasonably be read to exclude the third entity.

The Matthews Group cites a definition of "person" to support its argument. But even this cited definition includes any "legal or commercial entity" as qualifying as a "person." Here, "not less than ten percent (10%) of the members entitled to vote" is such an entity.

Fifth, the Matthews Group argues that the maxim of statutory construction "'expressio unius est exclusion alterius' (the mention of one thing implies the

---

[25] Id.

[26] Id. at 13-14.

exclusion of another thing),'" supports its conclusion that the Kritzman Group could not give notice because the secretary had not refused to send it. But the second half of § 2.7 is not an alternative to the first half. Thus, this argument is not relevant. As discussed above, § 2.5 and the second half of § 2.7 control in this case, and this maxim does nothing to alter our analysis.

As noted above, even if the trial court had relied on the correct provision of § 2.7, there are genuine issues of material fact that preclude summary judgment. Specifically, there is a genuine issue of material fact about who is a "member entitled to vote." There are also such issues about who is a "member of record" and whether notice was given to each member of record. We now discuss these issues.

### "Members Entitled to Vote"

First, there is a genuine issue of material fact about whether the alleged new members are "members entitled to vote" who had the authority to call the special meeting pursuant to § 2.5. Because this issue turns on bylaws that are unclear, granting summary judgment on this record would have been improper.

Island Landmarks contends that each of the alleged new members is a "member entitled to vote." To support this position, it relies primarily on two bylaw provisions.

One provision is § 2.2, which describes the "Qualification of Members":

> Membership shall be open and unlimited to all persons who have an interest in promoting historic preservation of architecture, landscape, and heritage of Vashon and Maury Islands situated in King County, Washington. In order to qualify for membership, a member shall pay annual membership dues which shall initially be

$25.00. . . . Members may have such other qualifications as the Board may prescribe by amendment to these Bylaws.[27]

Island Landmarks relies on this section for the proposition that there are two requirements in order to become a member. One, that an individual shares the relevant interest, and two, that the individual pay annual membership dues.[28] It argues that joining is a matter of "self-selection."

Additionally, Island Landmarks cites § 2.3, which discusses voting rights of members. That section provides:

> **2.3.1.** Each member entitled to vote with respect to the subject matter of an issue submitted to the membership shall be entitled to one vote upon each such issue.
>
> **2.3.2.** Each member entitled to vote at an election of directors may cast one vote for as many persons as there are directors to be elected and for whose selection such member has a right to vote.[29]

Island Landmarks argues that neither the bylaws nor the articles of incorporation create different classes of members, some of whom have voting rights and some of whom do not.[30] Thus, it relies on the above provisions for the proposition that all members who have satisfied the membership requirements are voting members.

Accordingly, Island Landmarks argues that these individuals were members entitled to vote because they fulfilled the membership requirements. It

---

[27] Clerk's Papers at 43.

[28] Appellant's Opening Brief at 31-32; Appellant's Reply Brief at 9-11.

[29] Clerk's Papers at 43.

[30] Appellant's Reply Brief at 11-12.

cites to Ellen Kritzman's declaration. Kritzman testified that over 60 individuals joined Island Landmarks by filling out a membership form and writing a check to the corporation for $25. She testified that she deposited 51 checks into an Island Landmarks bank account using an account number from a 2009 statement given to her by the corporation's former treasurer. Notably, the deposit was not done through the treasurer or with the prior knowledge of that officer of the corporation.

In opposition, the Matthews Group argues that these individuals were not "members entitled to vote." First, it argues that no membership applications were completed and provided to the corporation. Second, it argues that the bylaws were not properly complied with. For this argument, it relies on two additional bylaw provisions.

First, it cites § 4.9, which details the responsibilities of the treasurer:

> The Treasurer shall have charge and custody of and be responsible for all funds and securities of the corporation; receive and give receipts for moneys due and payable to the corporation from any source whatsoever, and deposit all such moneys in the name of the corporation, in banks, in trust companies or other depositories selected in accordance with the provisions of these Bylaws . . . .[31]

The Matthews Group relies on this provision to argue that the individuals' membership dues were not properly deposited. The Matthews Group does not dispute that Ellen Kritzman deposited 51 checks into the Island Landmarks bank account. Rather, it argues that this deposit was done without the treasurer's prior knowledge or consent and that no receipts were issued to the prospective members, contrary to the mandates of this bylaw.

---

[31] Clerk's Papers at 50-51.

Second, it cites § 4.8, which details the responsibilities of the secretary. That section states that the secretary shall "(b) see that all notices are duly given in accordance with the provisions of these bylaws or as required by law; (c) be custodian of the corporate records of the corporation; (d) keep records of the post office address and class, if applicable, to each member . . . ."[32]

The Matthews Group relies on this provision to argue that these individuals are not "members entitled to vote" because their names and addresses were not added to the corporation's membership list.[33] It argues that this is required because without the official membership list, the secretary cannot determine if ten percent of the members entitled to vote have called a special meeting.

These conflicting arguments cannot be resolved on the record that is before us. For example, it is unclear whether the procedure used in this case by the Kritzman Group to acquire membership is valid under the bylaws. Moreover, § 4.9, detailing the treasurer's responsibilities, states that the treasurer shall "have charge and custody of and be responsible for *all funds*" and "receive and give receipts for moneys due and payable . . . from *any source whatsoever*."[34] Whether this includes membership dues and whether such "charge and custody," and "responsibility" existed in this case, in light of the way in which deposits were made, are both unclear. There is also uncertainty about whether and to what

---

[32] Id. at 50.

[33] Respondent's Brief at 15-16.

[34] Clerk's Papers at 50 (emphasis added).

extent the secretary of this corporation has a role in this process. For example, Secretary Ken DeFrang's declaration states that "to [his] knowledge, none of [the Kritzman Group] ever joined." Additionally, there is uncertainty about the significance of the corporate records as they relate to membership validity or to voting rights.

In sum, because the bylaws are unclear and this record is incomplete, extrinsic evidence is required to ascertain the corporation's intent regarding its membership requirements and procedures. Although Ellen Kritzman's declaration offers her subjective intent about these requirements, it is insufficient, by itself, to prove the corporation's intent when the bylaws were approved. Accordingly, there is a genuine issue of material fact whether these individuals were "members entitled to vote" who could call the special meeting pursuant to § 2.5. Thus, even if the trial court had relied on the correct portion of § 2.7, summary judgment for the Matthews Group was still improper.

*"Members of Record"*

Additionally, there are genuine issues of material fact about who is a "member of record" and whether notice was given to each member of record as required by the first portion of § 2.7.

The term "member of record" is not defined by the bylaws. The Matthews Group asserts that to be a member of record, an individual's name must be on the membership list. In contrast, Island Landmarks argues that the individuals were members of record because their names and addresses appeared on their

15

checks for membership dues. The meaning of this term is unclear and is a genuine issue of material fact for trial.

Accordingly, there is also a dispute whether notice was mailed to "each member of record," as required by § 2.7. Island Landmarks argues that notice was sent to all of the members that existed and that there was no separate membership list maintained by the respondents. In her declaration, Ellen Kritzman stated that she mailed a notice of the special meeting "to all new members, as well as Mary Matthews, J. Nelson Happy, Owen Ryan, Ken DeFrang and Ellen DeFrang." She also testified in her declaration that Secretary DeFrang told her that he "did not have any records of the corporation, including a roster of dues-paying members because there were none."

But in Secretary DeFrang's declaration, he states that in 2010, he was the Registered Agent and had Island Landmarks' record books. Thus, at the very least, there is a factual dispute whether there were "records of the corporation." Further, if there were such records and they included a membership list, it is not clear whether Ellen Kritzman mailed a notice to each "member of record" as required by § 2.7. In her declaration, Mary Matthews asserts that Ellen Kritzman mailed the notice "only to the hand selected 'members' and to the incumbent board." Thus, this is another genuine issue of material fact for trial.

In sum, although we agree that the Kritzman Group was entitled to give its own notice of the special meeting and was not required to first go to the secretary to give notice, provided the other provisions we discussed were satisfied, there are genuine issues of material fact that such provisions have been satisfied.

These issues include who was a "member entitled to vote," who was a "member of record," and whether notice was provided to each member of record. Consequently, even if the trial court had relied on the correct provision of § 2.7, the grant of summary judgment to the Matthews Group was improper. Further, even though the trial court denied summary judgment to Island Landmarks on a different basis, denial was proper because there are genuine issues of material fact for trial.

## MOTION TO AMEND

Island Landmarks argues that it was improper to dismiss the case because the trial court did not rule on its motion to amend the complaint to add a claim that the Matthews Group be judicially removed in accord with RCW 24.03.1031. Because we reverse the grant of summary judgment to the Matthews Group and remand, we need not decide this question. The trial court will have the opportunity to address amendment if Island Landmarks chooses to renew its motion.

## MOTION TO ENJOIN PROSPECTIVE SALE

Finally, during the pendency of this appeal, Island Landmarks moved to enjoin a prospective sale of the nonprofit's property by the Matthews Group. The Washington State Department of Archeology and Historic Preservation, which is the holder of a recorded easement against the property, moved to file an amicus brief supporting the request for injunction. We granted the motion to file the amicus brief. The Matthews Group opposed the request for an injunction and requested the posting of a bond in the event we granted an injunction.

During oral argument of this appeal, Nelson Happy, counsel of record for the Matthews Group and also one of the respondents in this case, represented to this court that there is a prospective sale of the property to a purchaser. Happy did not disclose the purchaser's identity to this court. He further represented that the sale is not in escrow and would not proceed while this appeal is before this court. Based on these express representations and the record before us, we deny, without prejudice, the motion to enjoin the sale.

We affirm the order denying partial summary judgment in favor of Island Landmarks, but on a different ground than the trial court. We reverse the order granting summary judgment in favor of the Matthews Group and the judgment of dismissal with prejudice of the case. We remand for further proceedings and deny without prejudice the motion to enjoin the sale.

_Cox, J._

WE CONCUR:

_Spearman, A.C.J._