[No. 30771. Department One. July 11, 1949.]

KING COUNTY, *Respondent,* v. HANSON INVESTMENT COMPANY, *Defendant,* W. FRANK HORNE *et al., Appellants.*[1]

[1] Reported in 208 P. (2d) 113.

*Karr, Karr & Tuttle, Carl G. Koch,* and *Robert K. Keller,* for appellants.

*Charles O. Carroll* and *L. C. Brodbeck,* for respondent.

STEINERT, J.—Petitioner, King County, instituted proceedings in eminent domain to acquire full and unrestricted title to certain described real property, situated near Lake Sawyer, within the county, and consisting of 3.5 acres, more or less, designated as tract 92 on a plat of that general area. The public objects and uses for which this land was sought to be condemned are, as declared in the county's petition, "a public park, camping, scenic view and recreational site for public use and enjoyment."

Hanson Investment Company, a corporation, named as respondent in the petition, entered a formal appearance through its attorney. At about the same time, W. Frank Horne and Marie I. Horne, his wife, having obtained leave of court, filed their complaint in intervention in which they claimed a fee interest in the property through an alleged common-law reverter.

Thereafter, upon a hearing duly had, the trial court entered its order adjudicating public use and necessity with respect to the land described in the petition and setting a time for hearing on the question of damages as compensation for its appropriation. On that same day, George A. Eipper and fifty-seven other owners of property in the general vicinity of tract 92 were permitted to intervene in the action for the purpose of ascertaining and determining any rights which they might have to damages occasioned by the condemnation of the property for the uses stated in the petition.

On the day set for the second hearing, but before impaneling a jury to assess the amount of damages, the trial court heard legal argument with relation to the respective property interests of the parties to, and the interveners in, the action. Upon conclusion of the argument, and after full consideration of the matter, the trial court rendered its memorandum opinion wherein it expressed the view that

there was no necessity for the condemnation suit, in as much as, under the law, King county already had full title to the property for use as a public park, by virtue of certain prior instruments of conveyance and dedication, and that neither Hanson Investment Company nor any of the interveners had any residuary right, title, or interest in tract 92 which would entitle them to an award of damages in condemnation for the objects and uses stated in the petition. In accordance with its expressed view, the trial court made findings of fact and conclusions of law and entered judgment dismissing the action.

Interveners W. Frank Horne and Marie I. Horne thereupon sought to have this court review, by writ of certiorari, the findings and conclusions previously made and entered by the trial court. That proceeding was disposed of in this court by an opinion directing that the writ be quashed, on the ground and for the reason that the judgment of dismissal entered by the trial court in the condemnation action was a final adjudication of the rights of the interveners and therefore the proper remedy was by appeal, rather than by writ of certiorari. *State ex rel. Horne v. McDonald,* 32 Wn. (2d) 272, 201 P. (2d) 723. These same interveners thereupon perfected their present appeal in the condemnation proceeding, and they are now the only parties prosecuting such appeal.

The evidence adduced in the trial court is documentary only and presents to this court an undisputed factual situation, for a determination of the law applicable thereto.

On January 5, 1932, Hanson Investment Company, a corporation, to which we shall hereinafter refer as Hanson, executed and delivered to King county, the respondent upon this appeal, a quitclaim deed, the record copy of which contains the following language:

"The grantor herein Hanson Investment Company for the consideration of One & 00/100 Dollars and also of benefits to accrue to *them* by reason of laying out and establishing a public road through their property, and which is hereinafter described, conveys, releases, and quit-claims to the County of King, State of Washington, for use of the public

forever, as a public road and highway, all interest in the following described real estate, viz:

"A strip of land in Govt. Lot 5, Section 4, Twp. 21 N. R. 6 E. W. M., described as follows:

"[Description by metes and bounds.] Right-of-way A. J. Hanson Road. situated in the County of King, State of Washington."

The westerly portion of the property described in, and conveyed by, this deed consists of a narrow rectangular strip of ground, uniform in width. The easterly portion, however, extending to the shore of Lake Sawyer, is irregular in shape and includes a far greater area than would reasonably be required for the construction of a public road or highway.

Thereafter, on May 12, 1939, Hanson executed and dedicated a plat of "North Shore of Lake Sawyer." On this plat the land previously deeded to King county in the manner above set forth is delineated as consisting of two contiguous tracts. The southernmost tract appears as a uniform sixty-foot strip of land, extending from the west boundary of government lot 5 in an easterly direction to the shore line of Lake Sawyer, and is designated on the plat as an "Existing County Road." The other tract appears approximately triangular in shape, its northwesterly dimension being three hundred seventy-five feet, its southerly dimension six hundred thirty feet, and its shore line along Lake Sawyer, constituting its third, or northeasterly, dimension, being about five hundred forty feet; this triangular tract lies immediately north of the easterly· portion of the sixty-foot strip above mentioned, and is designated on the plat as tract 92. By inscription appearing upon the face of the plat as recorded, and within the designated lineal boundaries of tract 92, the dedicatory instrument recites that this tract was "Deeded to King County as Public Park Jan. 5, 1932." However, so far as the record discloses, the only deed to King county from Hanson under date of January 5, 1932, is the one set forth above.

The pertinent language of dedication appearing upon the plat is as follows:

"KNOW ALL MEN BY THESE PRESENTS—THAT WE THE UN-DERSIGNED HANSON INVESTMENT COMPANY OWNERS IN FEE SIMPLE OF THE LAND HEREBY PLATTED, HEREBY DECLARE THIS PLAT AND DEDICATE TO THE USE OF THE PUBLIC FOREVER, ALL STREETS SHOWN HEREON AND THE USE THEREOF FOR ALL PUB-LIC PURPOSES NOT INCONSISTENT WITH THE USE THEREOF FOR PUBLIC HIGHWAY PURPOSES: ALSO ALL PARKS AND SEWER EASEMENTS: . . ."

This plat was examined and approved by the board of county commissioners of King county and by the King county planning commission on August 1, 1939, and, on the following day, was filed for record at the request of King county. The only portion of the plat which is designated as a park is tract 92, such designation being by way of the recital hereinabove quoted.

On October 16, 1943, Hanson conveyed tracts 87, 88, 89, 90, and 91, plat of North Shore of Lake Sawyer, to the appellants herein, W. Frank Horne and Marie I. Horne. Tract 91 abuts tract 92 on the west, and it is upon the owner-ship of tract 91 that appellants have based their claim to a fee interest in tract 92.

To justify their claim for an award of damages in this proceeding, appellants have advanced an elaborate and in-genious argument. They contend that, by the deed of Jan-uary 5, 1932, Hanson conveyed what is now tract 92 to King county for road purposes *only*; that because of such ex-pressed limitation of use, the deed created a determinable fee simple estate in King county, with the possibility of re-verter remaining in the grantor, Hanson; that since the deed contained no provision requiring re-entry by the grantor in order to terminate the grantee's interest in the land, the conveyance constitutes what is technically known as a determinable, defeasible, or qualified fee, subject to be defeated absolutely and immediately upon the happening of a designated event; that the contemplated use of the property for park purposes is inconsistent with the use thereof for road purposes as granted by the deed, and any attempted use of the property for any such inconsistent purpose would be unlawful; that the condemnation pro-

ceedings brought by the county, upon the resolution of the county commissioners, evidenced the intention of the county to abandon its right to use the property for road purposes; that, in consequence of the commencement and maintenance of such condemnation proceedings, a reverter of the county's defeasible estate immediately took place; that, by virtue of the deed from Hanson to appellants in 1943, conveying tract 91, which is the only privately owned land abutting upon tract 92, the possibility of reverter referred to above passed from Hanson to appellants; and that, consequently, appellants, as sole abutting owners, are entitled to a jury award for damages measured by the market value of their present fee simple estate in tract 92.

We are unable to agree with this chain of reasoning.

In the first place, the deed of January 5, 1932, from Hanson to King county, does not say that the land is conveyed for road purposes *only,* as appellants would construe its phraseology, but simply that it is "for use of the public forever, as a public road and highway."

In the next place, the construction to be placed upon the deed here in question will not support the contention that it created, in itself, a determinable, defeasible, or qualified fee, subject to a possibility of reverter.

A determinable, qualified, or defeasible fee is an estate which is limited to a person and his heirs, with a qualification annexed or subjoined thereto, by which it is provided that the fee must determine whenever that qualification is at an end. Ballentine's Law Dictionary 346, 370, 1059; Bouvier's Law Dictionary, Vol. 1, 857 and Vol. 3, 2776.

As stated in 4 Thompson, Real Property (Perm. ed.) 709, § 2171, a determinable or qualified fee has all the attributes of a fee simple, except that it is subject to be defeated by the happening of the condition which is to terminate the estate, the grantor retaining at most a mere possibility of reverter. This court has so held in *Loose v. Locke,* 25 Wn. (2d) 599, 171 P. (2d) 849, and other cases therein cited.

It will be noted that the deed here involved expressly states that the grantor "conveys" *all interest* in the land to

King county. It will also be noted that the deed does not, of its own force, make the estate held thereunder by the county one of an expressly conditional nature, nor does it contain any provision, express or implied, to the effect that the grantee's estate was to terminate upon the happening of any specified event.

It is the almost universal rule that, in order to make an estate conditional, the words used in the deed must clearly indicate such an intent, either by express terms or by necessary implication from the language used. 4 Thompson, Real Property (Perm. ed.) 563, § 2037; 1 Tiffany, Real Property (3d ed.) 309, § 192; 19 Am. Jur. 492, Estates, § 32; 26 C. J. S. 479, Deeds, § 147.

It is also the settled rule in this state, as elsewhere, that a deed which by its terms *conveys* the land to a grantee operates as a grant of the fee, although it may also contain a recital designating, or even restricting, the use to which the land may be put. *Aumiller v. Dash,* 51 Wash. 520, 99 Pac. 583; *Loose v. Locke, supra,* and cases therein cited; *Fitzgerald v. Modoc County,* 164 Cal. 493, 129 Pac. 794, 44 L. R. A. (N.S.) 1229; *Holloman v. Board of Education,* 168 Ga. 359, 147 S. E. 882; *Wright & Taylor v. County Board of Education,* 151 Ky. 560, 152 S. W. 543; *Texas & Pacific R. Co. v. Martin,* 123 Tex. 383, 71 S. W. (2d) 867, writ of certiorari denied in 293 U. S. 598, 79 L. Ed. 691, 55 S. Ct. 121; 2 Thompson, Real Property (Perm. ed.) 8, § 459; 19 Am. Jur. 496, Estates, § 36; 26 C. J. S. 508, Deeds, § 162.

The effect of such recitals in a deed of conveyance is well stated in 19 Am. Jur. 536, Estates, § 71, as follows:

"A condition will not be raised by implication from a mere declaration in the deed that the grant is made for a special and particular purpose without being coupled with words appropriate to make such a condition. Such recitals are usually construed as giving rise, at most, to an implied covenant that the grantee will use the property only for the specified purpose. They are merely to restrain the generality of the preceding clauses; and in the case of sales to municipal and other corporations, they are considered as having been inserted merely for the purpose of showing the grantee's authority to take, even though the authoriza-

tion under which the land is taken itself limits its use to the purpose specified."

■ Without attempting to define, by technical terminology, the exact type of estate taken by King county under the deed of 1932, we are convinced that the parties intended that the deed convey, and that the grantee take, the highest estate that a municipal corporation is empowered to hold. Any "reverter," or possibility thereof, must therefore come about through operation of law peculiar to land tenure for specified purposes by such municipal bodies, and not through any conditional limitation contained in the deed itself.

■ Appellants seemingly recognize that their claim to reverter, or possibility of reverter, must arise by operation of law, for their principal contention, as contained in their expressed chain of reasoning, is that the condemnation proceedings brought by the county evidenced the county's intention to *abandon* its right to use the property for road purposes, and that, in consequence of the commencement and maintenance of such proceedings, a reverter of the county's defeasible estate immediately took place. We do not agree with either the premise or the conclusion of this contention.

One of the cases strongly relied upon by appellants is *Johnston v. Medina Imp. Club,* 10 Wn. (2d) 44, 116 P. (2d) 272, which was an action to quiet title. King county, upon being joined as a defendant in that action, filed a disclaimer of interest in the property, and this court held that such disclaimer operated as an abandonment or relinquishment which terminated the rights of the public. The pertinent language of the decision reads:

"In disclaiming all interest in the dedicated property, the county, in effect, may be said to have either (1) abandoned the property or (2) refused to execute the express specific purpose of the dedication. By the weight of authority, where property dedicated to the public is abandoned or relinquished, the public's rights are terminated and the land by operation of law reverts to the dedicator."

By its petition in eminent domain, King county, far from indicating an intention to abandon or vacate any portion

of the premises conveyed by the deed of 1932, merely sought to appropriate the unused portion of the property to *additional* specified purposes. It is undisputed that the existing road is still in use and has in no sense been actually abandoned. There was no disclaimer by the county, and hence it cannot be inferred that the county abandoned the property or refused to execute the express specific purpose of the original grant; in fact, every inference to be drawn from the circumstances presented in this case is to the contrary.

In further support of their contention that the fee title to tract 92 has reverted to them by operation of law, appellants cite a number of cases involving easements in streets by virtue of dedicatory plats, and subsequent vacations by the grantee municipalities.

Those cases are not in point, for the reason that in the present instance there is not the slightest suggestion that any existing road or street, abutting any property now owned by appellants, has been, or will be, vacated by the appropriation of tract 92 to the purposes herein sought, or by any other act of the county.

Concluding our present reference to appellants' argument, we may say further that we do not agree with their contention that the use of tract 92 for park purposes is, under the circumstances of this case, inconsistent with the grant for road purposes as contained in the deed. We shall refer to this point more in detail a little later herein.

After due consideration of appellants' contentions and argument, we have come to the conclusion and now hold that, even though some infirmity *may* possibly now inhere, or *may* in the future develop, in the title presently held by King county under the deed of 1932, any possible rights in the nature of reversionary interests in either Hanson or the present abutting owners, accruing by operation of law, have not as yet come into existence. Appellants have acquired no title to, nor interest in, tract 92 and, consequently, are not entitled to any damages arising

out of condemnation of the tract, under any of the contentions here advanced by them.

This conclusion would, ordinarily, be sufficient to dispose of this case.

However, there still remains the question whether King county has the legal right to use tract 92 for *park purposes,* and, in the interest of all parties concerned, including the public generally, it is necessary that we decide that question and definitely determine the rights of all such parties, thereby obviating further litigation upon that same subject.

If King county now has the right to use tract 92 for park purposes, it must, of course, be by virtue of the deed of January 5, 1932, from Hanson to the county, supplemented by the terms, provisions, and effect of the duly executed, accepted, and recorded Hanson plat of May 12, 1939.

Throughout appellants' brief, various references are made to a former proceeding brought by the appellants against King county to restrain the county from developing tract 92 as a public park. As pointed out by respondent, however, no part of the record in that proceeding was ever put in evidence or made a part of the record in this case, and therefore it cannot be considered in determining the present controversy. Nevertheless, from appellants' own assertions respecting the grounds and result of that former proceeding, it is abundantly clear that the county commissioners of King county were originally of the belief that the county had sufficient title to enable it to use the land here in question for park purposes but, in view of the claims made against it in the former proceeding then pending, resolved to condemn any possible or alleged outstanding adverse interests and to make compensation therefor. If not virtually conceded, it is at least clearly deducible, from what does appear in this record, that the present action was instituted because of the circumstances, and for the reasons, above stated.

The trial court, after taking the matter under advisement, rendered a memorandum opinion announcing the

conclusion that "there was no necessity for this condemnation suit, as under the law it was apparent that King County already had title to the property for the use as a public park, which is the very object of this proceeding." The reasons given by the trial court for its conclusion were expressed as follows:

"It is quite apparent that the Hanson Investment Company, in giving the deed of January 5, 1932, never intended to have that portion which is now Tract 92, amounting to $3\frac{1}{2}$ acres consisting of the land in question, used for a public road. On the face of it, it just doesn't make sense. It must have been the intention of the grantor at the time he [it] gave the deed of January 5, 1932, to give the $3\frac{1}{2}$ acres for a public park. This is apparent when in 1939 the donors, as dedicators of the plat, put the words 'Deeded to King County as Public Park, January 5, 1932' on lot 92 of the plat, being the land under condemnation for park purposes.

. . .

"The more I have reflected on this question the more it appears to me that the true basis for my decision is not estoppel but a clear intent, deducible from the record, of the grantor and dedicator to have given this tract in question to King County for park purposes. . . . In 1939 this grantor made clear that what it really intended as to the tract in question was to give it for park purposes."

We are in accord with the trial court's reasoning and conclusion as above expressed. As has heretofore been shown, this whole controversy stems from the fact that the Hanson deed of January 5, 1932, included not merely a uniformly rectangular strip of ground sixty feet in width, extending easterly to the shore of Lake Sawyer, but also a triangular-shaped area of land comprising three and one-half acres immediately north of the easterly portion of the sixty-foot strip and abutting upon the lake.

It is puzzling that a deed, given for "road" purposes, should include, in the easterly portion of its description, a tract of land of so large an area and of such irregular shape. It is inconceivable, however, that the parties contemplated that the entire area in that locality could, or would, be covered by an improved road. It becomes the more incomprehensible when we note the fact that the deed on its face

explicitly refers to "Right-of-way A. J. Hanson Road," and consider the further fact that the record specifically discloses that the A. J. Hanson road was at about that same time actually surveyed and constructed as a sixty-foot road running along the south line of government lot 5, which was included in the plat of North Shore of Lake Sawyer. In the words of the trial court, the situation "just doesn't make sense."

It would be equally illogical to deduce from the language of the deed that the excess property, over and above that actually improved as a road, was to be held by the county *in vacuo*, for *no* purpose whatever, and, of course, none of the parties herein draws or favors any such deduction.

■ We have little, if any, precedent for resolving the question, unanswered by the words of the deed itself, of what uses might properly be made of this excess property. Consequently, we must avail ourselves of such evidence pertaining thereto as will best accord with the apparent intention of the parties, and thus endeavor to arrive at that solution which is the most definitive of the rights of *all* the parties, and the least in derogation of the rights of *some*. In an analogous situation confronting this court in the early case of *Aumiller v. Dash, supra* (51 Wash. 520, 99 Pac. 583), the court stated that, inasmuch as the ordinary canons of construction were not applicable, about the only thing the court could do would be to examine carefully the deed there involved and determine as best it could what was intended by the grantor to be conveyed.

The deed of January 5, 1932, expresses, as the primary consideration for the conveyance of the land therein described, the benefit accruing to the grantor, Hanson, through the construction and maintenance of a road by the county. It would appear that, in return for such contemplated benefit, more land than would reasonably be required for road purposes was included in the terms of the grant. It is not disputed that this consideration for the grant has been executed by the county by its construction and maintenance of the county road.

Rejecting, as we do, the theory that such excess property was to be used either for *road* purposes or else for *no* purpose, and giving full effect to the consideration respectively given and received by the parties to the deed, we think it is a fair and logical inference that the parties contemplated that such uses could be made of the excess property as were not *inconsistent* with the use of the remaining portion as a county road. It is at this juncture that the matter of the plat of 1939 comes into play as throwing light upon what the parties contemplated by the deed.

However, before considering the effect of the execution, acceptance, and recording of the plat, and the recitals contained therein, it is important to note that, between the respective dates of execution of the deed and of the plat, the rights of no person, so far as can be determined from the record, had intervened to inhibit the parties to the deed from making an agreement between themselves with respect to the nature and scope of permissible user of the excess property. During that period, the right to question the use made of such property, whether under the theory of implied covenant or of something in the nature of an equitable servitude, remained in Hanson alone, for it still owned all the abutting property, and, consequently, the question of whether any particular use was or was not inconsistent with the use of the remaining property for road purposes might have been made, at Hanson's instance, the subject of judicial determination.

Though apparently conceding that Hanson and King county by appropriate action might have had reformation of the deed of 1932 in order to clarify the question of permissible user, appellants have instead attacked the capacity of Hanson to dedicate, by plat or otherwise, land or an interest in land, the title to which Hanson no longer held.

Whatever may have been the right or remedy of the parties in that respect, we do not think it furnishes the only key to the proper solution of the problem created by the terms of the deed. We are of the opinion that the execution and acceptance of the plat, and the recitals con-

tained therein, constituted a definitive statement on the part of Hanson that the use, for park purposes, of the excess portion, comprising tract 92, was *not,* in fact, a use inconsistent with the use of the other portion which was already rendering service as a road. In short, we are of the opinion that the recitals in the plat, acquiesced in by all interested parties, and placed of record for the benefit of others, amount to a practical construction, by the parties in interest, with respect to an uncertainty or latent ambiguity contained in the deed of 1932.

In *Gold Bar v. Gold Bar Lbr. Co.,* 109 Wash. 391, 186 Pac. 896, this court approved the following rule regarding the construction of deeds:

"Where a deed is of doubtful meaning, or the language used is ambiguous, the construction given by the parties themselves, *as elucidated by their conduct or admissions,* will be deemed the true one unless the contrary be shown." (Italics ours.)

In 16 Am. Jur. 536, Deeds, § 174, appears the following statement of the rule:

"A deed which is ambiguous or uncertain may be definite and certain by the practical construction of the parties to it *while in interest.* The construction put on such a deed by the parties is an indication of their intention. Therefore, where the construction of a deed is doubtful, great weight is to be given to the construction put upon it by the parties, especially in the case of doubtful questions which must be presumed to be within their knowledge, and such practical interpretation of the parties themselves by their acts under a deed is entitled to great, if not controlling, influence." (Italics ours.)

In 26 C. J. S. 346, Deeds, § 93, the rule is similarly stated in the following language:

"Where a deed is of doubtful meaning, or the language used is ambiguous, the construction given by the parties themselves, as elucidated by their conduct or admissions, will be deemed the true one, unless the contrary is shown. So, where all the parties have acted on a particular construction, such construction should be followed unless it is forbidden by some positive rule of law."

Among the more recent cases expounding the rule are *Cummings v. Midstates Oil Corp.*, 193 Miss. 675, 9 So. (2d) 648; *Trumbla v. State,* 191 Okla. 119, 126 P. (2d) 1015; *Rhodes Cemetery Ass'n v. Miller,* 122 W. Va. 139, 7 S. E. (2d) 659.

Under circumstances such as we have here before us, where no concurrent or conflicting rights, public or private, have intervened since the execution of the original deed, no rule of law prevents the parties to the deed from agreeing upon or clarifying the scope of uncertain or ambiguous limitations suggested in, but undefined by, such deed.

We conclude our opinion with this statement: The decision rendered by the trial court, and by this court as well, is not to be taken as holding or indicating that the title held by King county is sufficient to permit an appropriation of the land *to any and all purposes,* but simply that its title is sufficient for the permissible use of the property for *park purposes.*

The judgment of dismissal entered by the trial court is affirmed.

JEFFERS, C. J., BEALS, MALLERY, and HILL, JJ., concur.