FILED
COURT OF APPEALS
DIVISION II

2015 SEP -9 AM 11: 56

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BARLOW POINT LAND CO., LLC., a Delaware limited liability company; and PORT OF LONGVIEW, a municipal corporation,<br><br>Respondents,<br><br>v.<br><br>KEYSTONE PROPERTIES I, LLC., a Washington limited liability company,<br><br>Appellant. | No. 46080-7-II<br><br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — Keystone appeals from the trial court's order granting summary judgment to Barlow Point Land Company LLC (Barlow Point) and the Port of Longview (the Port) and quieting title to disputed tidelands.

In 2006, Terra Firma, Inc. (Terra Firma), a company owned by a father, Robert Radakovich (Radakovich I), and his son, Robert Radakovich (Radakovich II), conveyed two parcels of its land to Stephen Jeffrey Wilson. In 2012, Wilson conveyed both parcels to Barlow Point. Barlow Point then conveyed a portion of the tidelands[1] of one of the parcels to the Port. A few weeks later, Terra Firma attempted to convey the tidelands of the same parcel to Keystone Properties I LLC (Keystone). Barlow Point and the Port jointly filed a complaint against Keystone to quiet title to the disputed tidelands. The trial court concluded that ambiguities existed in the 2006 deed as to whether it included the disputed tidelands. The trial court found that extrinsic evidence demonstrated the parties intended to convey the disputed tidelands through the 2006 deed.

---

[1] Tidelands are submerged lands affected by the ebb and flow of tides. First class tidelands are located within city limits or within two miles of city limits. CP at 188. Second class tidelands are located more than two miles from city limits. The tidelands abutting Parcel B are second class tidelands because they were initially more than two miles from Longview city limits.

Keystone argues that the trial court erred by granting summary judgment because the 2006 deed to Wilson is not ambiguous and the trial court erred when it considered extrinsic evidence to determine whether the parties intended to convey the disputed tidelands in the 2006 deed. We agree with the trial court that the 2006 deed is ambiguous; therefore, it did not err by considering extrinsic evidence. Because the extrinsic evidence demonstrates that the parties intended to convey the disputed tidelands in the 2006 deed and no genuine issue of material fact exists, we affirm.

## FACTS

### I.    OVERVIEW

Radakovich I and Radakovich II owned multiple parcels of land constituting over 300 acres along the Columbia River in Cowlitz County. In 2006, the Radakoviches, through their company Terra Firma, conveyed the only two waterfront parcels it owned to Wilson by statutory warranty deed ("2006 deed"). The legal description in the 2006 deed describes the parcels as follows:

**Parcel A:**

Lot 2 of short subdivision no. 91-001, as recorded in volume 6 of short plats, page 83, under auditor's file no. 910204032; and being a portion of the George Barlow D.L.C.;
Together with all tidelands of the second class, situated in front of, adjacent to or abutting the above described uplands and as conveyed in Parcel "J" of said deed, volume 997, page 242 (Fee No. 840924042).

**Parcel B:**

All that portion of George Barlow D.L.C. and George Fisher D.L.C. lying outside of Columbia River Dike of consolidated diking improvement district no. 1, said dike being described by deed in volume 121, page 391, auditor's file no. 51256;

> Excepting therefrom that portion lying northerly of a line that is parallel to and 1,765.70 feet south of the south line of section 22, township 8 north, range 3 west of the W.M.
>
> Situate in Cowlitz County, State of Washington.

Clerk's Papers (CP) at 103. From 2006 to 2012, Wilson used the parcels, including the tidelands abutting and adjacent to Parcel B (Parcel B tidelands).

In 2010, Terra Firma lost its remaining parcels to foreclosure and the Port purchased them at a trustee's sale. In November 2011, after a preliminary title report suggested that Terra Firma still owned the Parcel B tidelands, the Port offered Radakovich I $10,000 for a quitclaim deed conveying any interest he may have in the Parcel B tidelands. Radakovich I did not accept the offer.

Shortly thereafter on December 21, 2011, Radakovich I filed for bankruptcy. Radakovich I did not list the Parcel B tidelands in the bankruptcy schedules. He listed Terra Firma as a dissolved corporation with zero value.

On January 9, 2012, Wilson entered into a purchase and sale agreement with Barlow Point to convey all the land he had purchased from Terra Firma. On February 14, 2012, Wilson conveyed Parcel A and Parcel B to Barlow Point, using the legal description from the 2006 deed. Later in 2012, Barlow Point conveyed a portion of the Parcel B tidelands to the Port.

On January 25, 2012, Terra Firma executed a statutory warranty deed conveying the Parcel B tidelands to Keystone for $10.

## II.    SUMMARY JUDGMENT

Barlow Point and the Port jointly filed a complaint against Keystone to quiet title to the Parcel B tidelands. The primary issue before the trial court was whether the 2006 deed to Wilson conveyed the Parcel B tidelands to Wilson, or whether Terra Firma retained ownership.

Barlow Point and the Port moved for summary judgment on three bases. First, they argued that the 2006 deed unambiguously conveyed the Parcel B tidelands to Wilson because the language used in the description of Parcel A included the Parcel B tidelands. Second, to the extent the 2006 deed is ambiguous, they argued extrinsic evidence demonstrated that the parties intended to convey the Parcel B tidelands to Wilson. Third, they argued the Parcel B tidelands were conveyed to Wilson in the 2006 deed pursuant to the *Wardell*[2] doctrine.

In support of their motion for summary judgment, Barlow Point and the Port submitted, in relevant part, the declarations of Wilson; Calvin Hampton, a licensed land surveyor; and Norm Krehbiel, Chief Operating Officer for the Port. In response to Barlow Point and the Port's motion for summary judgment, Keystone submitted evidence in the form of declarations and deposition testimony. The following facts are derived from the declarations, deposition testimony, and exhibits.

A.     Wilson's Declaration

Wilson stated that, prior to signing the 2006 deed, the Radakoviches provided him with a tax appraisal of Parcel A and Parcel B that included the Parcel B tidelands. From the time of the 2006 deed until Wilson conveyed the parcels to Barlow Point in 2012, Wilson paid all of the property tax for Parcels A and B. This area encompassed all river frontage and tidelands of both parcels.

The purchase and sale agreement between Terra Firma and Wilson, signed on January 13, 2006, specified that Wilson would receive "'a minimum of 20 acres.'" CP at 82. Wilson stated that "[t]he only way that a 'minimum of 20 acres' is achieved is by the inclusion of the [Parcel B]

---

[2] *Wardell v. Commercial Waterway Dist. No. 1 of King County*, 80 Wash. 495, 141 P. 1045 (1914)

tidelands." CP at 82. The purchase and sale agreement did not reserve any tidelands to Terra Firma.

From 2006 to 2012, Wilson continuously used the tidelands. He operated a duck boat business, and used the tidelands to launch and stage his boats. Wilson also submitted five mooring buoy applications to the state for locations on the Parcel B tidelands. The Radakoviches "never came near" the tidelands during this time, nor did they object to Wilson's use of the tidelands. CP at 87.

Two days prior to signing the purchase and sale agreement, Radakovich II sent Wilson an e-mail stating, "Do you want to extend me an option to buyback [sic] in case of a suitor for the whole property? You will also be in negotiation with the Port on the tidelands I think when they come to the table." CP at 95. In July 2006, Radakovich II copied Wilson on an e-mail to his attorney in which he referred to Wilson as the owner of "the tidelands." CP at 105.

In early October 2006, Radakovich II offered Wilson "$100,000 for the water frontage from the road to the beach east to the property line at the BPA towers," a reference to the Parcel B tidelands. CP at 84. In late October 2006, Radakovich II sent Wilson an option agreement that included a map describing the tidelands Radakovich II wanted to purchase. It included the Parcel B tidelands. After Wilson refused to sign the option agreement, Radakovich II approached Wilson with a new offer that again indicated that the tidelands Radakovich II sought to purchase from Wilson included the Parcel B tidelands. Following Wilson's refusal of this offer, Radakovich II sent Wilson e-mails that included the following statements:

> I need to get the tidelands back for many reasons including my own sanity Jeff. I made a mistake not paying Duncan to survey out the tidelands when we executed this deal. I could not afford it and unnecessarily handed you control of the waterfront access. . . .
>
> I need the tidelands back to survive. . . .

I am on the edge of my life and I need those damn tidelands back . . . .

I am tired and trying to bridge a chasm of vast expanse and I can't do it without those damn tidelands back.

CP at 85, 86.

In 2008, Terra Firma commenced litigation against Wilson regarding easements over Terra Firma's remaining parcels. During that litigation, the Radakoviches never asserted an ownership interest in any portion of the tidelands, including the Parcel B tidelands. The trial court in that case granted a preliminary injunction preventing Wilson from entering the Radakoviches' property "for any reason other than accessing his tidelands." CP at 86. A map admitted and used during the 2008 trial indicated the Parcel B tidelands belonged to Wilson.

Radakovich I filed for bankruptcy in December 2011. He did not list the Parcel B tidelands as his property in the bankruptcy schedules.[3] He listed Terra Firma as a dissolved corporation with zero value.

B. Hampton's Declaration

Hampton reviewed the title history of the parcels. He opined that as of 2012 the Parcel B tidelands belonged to Wilson and that Terra Firma and Keystone had no ownership interest. Hampton also noted that Wilson could not have received 20 acres as promised in the purchase and sale agreement unless the Parcel B tidelands were conveyed in the 2006 deed.

Hampton further opined that the Parcel B tidelands were "expressly included within the legal description" of Parcel A because the language "and as conveyed in Parcel J of said Deed, Volume 977, page 242, (Fee No. 840924042)" included all of the Parcel B tidelands. CP at 190 (quoting CP at 103). Hampton reached this conclusion because the conveyance of the Parcel A

---

[3] The bankruptcy records were attached as an exhibit to Wilson's declaration.

6

tidelands was complete without the additional language referencing Parcel J; thus, the purpose of the second portion of the conveyance following the word "and" was to convey separate additional tidelands. CP at 190.

Hampton also provided an explanation for the reference to Parcel J. In 1923, the State of Washington sold 3.65 miles of tidelands to Long Bell Lumber Company. The legal description of the tidelands included the Parcel B tidelands. Long Bell Lumber Company, under the name International Paper Company, later sold a large amount of its tidelands to International Paper Realty Corporation. Parcel J is among the parcels included in the deed to International Paper Realty Corporation. According to Hampton, the portion of land comprising the Parcel B tidelands is included within Parcel J. In 1987, International Paper Realty Corporation conveyed some of its tidelands to Radakovich I. That deed included tidelands described as "Parcel H," which is the "the same as 'Parcel J' in the previous [d]eed with the exception of some tidelands that had been sold off. Parcel H convey[ed] to . . . Radakovich [I] that portion of the 'Parcel J' tidelands that are in front of the Wilson property [the Parcel B tidelands]." CP at 191. Therefore, according to Hampton, when Terra Firma conveyed the tidelands described in Parcel J to Wilson, it conveyed the Parcel B tidelands.

C.      Krehbiel's Declaration

In November 2011, Krehbiel attended a meeting in which the Port offered Radakovich I $10,000 for a quitclaim deed to convey any interest he may have had in the Parcel B tidelands. Krehbiel provided Radakovich I with a preliminary title report suggesting Terra Firma owned the Parcel B tidelands. At that time Radakovich I "responded that he no longer owned the tidelands." CP at 210.

7

D.  Reynolds's Deposition

Arlene Reynolds, a title officer for Cowlitz County Title Company, prepared the legal descriptions for the 2006 deed. She admitted to using legal descriptions from a previous deed. Reynolds did not recall discussing the legal descriptions with the parties and did not know why the legal description for Parcel A included reference to tidelands but the legal description for Parcel B did not.

E.  Woodruff's Deposition

Woodruff stated that when he first examined the title history of the Parcel B tidelands, he excluded the 2006 deed to Wilson and certified that Terra Firma conveyed the Parcel B tidelands to Keystone in 2012. Woodruff could not offer an explanation as to why he excluded the 2006 deed to Wilson. But, Woodruff explained that upon further examination, he believed that the phrase "[a]nd as conveyed under Parcel J" in the 2006 deed conveyed to Wilson the same tidelands that were conveyed under Parcel J, which includes the Parcel B tidelands. CP at 350. He agreed that, "unfortunately" the language would also include other Parcel J tidelands that had already been conveyed to other parties in previous years. CP at 351.

F.  Gish's Declaration

Dennis Gish, a title officer with Columbia Title Agency opined that the Parcel B tidelands were not included in the 2006 deed to Wilson. The "absence of any reference to the tidelands in the legal definition of Parcel B or any indication that the tidelands abutting or adjacent Parcel B would be conveyed means that those tidelands were not part of the grant of that deed." CP at 301. Gish believed his opinion was "consistent with the history of how these particular tidelands have been described and conveyed" because the portion comprising the Parcel B tideland was described as a separate parcel in the deed from International Paper Company to International Paper Realty

8

Corporation. CP at 302. The 1987 deed from International Paper Realty Corporation to Radakovich I also described the tidelands as a separate parcel. Because "all deeds conveying the tidelands have taken pains to describe them with specificity," the absence of a reference to the Parcel B tidelands in the 2006 deed to Wilson means that the tidelands were not conveyed. CP at 303.

G.    Radakovich I's and Radakovich II's Declarations

Radakovich I declared that he was not involved in the 2006 transaction with Wilson.

Radakovich II stated that prior to the 2006 deed, Wilson never expressed a desire to purchase tidelands or a belief that he would be purchasing tidelands. He corroborated Radakovich I's statement that Radakovich I was not involved in the 2006 transaction with Wilson. Radakovich II explained that he based his reference to the tidelands in his e-mails to Wilson on information from an associate of the Port in 2006. Prior to receiving this information, he believed that Terra Firma still owned the Parcel B tidelands. Radakovich II also said that the previous litigation between Terra Firma and Wilson did not address what was conveyed in the 2006 deed.

H.    Van Vessem's Declaration

Van Vessem, Keystone's manager, also attended the 2011 meeting between the Port and Radakovich I. Van Vessem recalled that Radakovich I did not state that he no longer owned the tidelands in response to the Port's November 2011 offer. He also said that Cowlitz County established a new tax parcel for the Parcel B tidelands in 2012.

The trial court granted Barlow Point and the Port's motion for summary judgment. It also granted their motion to quiet title. The trial court concluded that the 2006 deed was ambiguous as to whether the Parcel B tidelands were included in the conveyance to Wilson. The trial court resolved the ambiguity by considering extrinsic evidence, which it concluded demonstrated Terra

9

Firma's intent to convey the Parcel B tidelands to Wilson in the 2006 deed. Alternatively, the trial court also granted Barlow Point and the Port's motion for summary judgment under the *Wardell* doctrine. Keystone appeals.

## ANALYSIS

I.     STANDARD OF REVIEW

We review an order for summary judgment de novo, engaging in the same inquiry as the trial court. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe all facts and their reasonable inferences in the light most favorable to the nonmoving party. *Jones*, 146 Wn.2d at 300.

A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton*, 115 Wn.2d at 516. If the moving party satisfies its burden, the nonmoving party must present evidence demonstrating that a material fact remains in dispute. *Atherton*, 115 Wn.2d at 516. The nonmoving party may not rest on allegations or denials from the pleadings. CR 56(e). The response, by affidavits or as otherwise provided under CR 56, must set forth specific facts that reveal a genuine issue for trial. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988). "[C]onclusory statements of fact will not suffice." *Grimwood*, 110 Wn.2d at 360. If the nonmoving party fails to demonstrate that a material fact remains in dispute, and reasonable persons could reach but one conclusion from

all the evidence, then summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

II.     AMBIGUITY

Keystone first argues that the 2006 deed is not ambiguous. We disagree. Because the 2006 deed is capable of more than one fair and reasonable interpretation, it is ambiguous.

A.      Construing a Deed

The interpretation of a deed is a mixed question of fact and law: the parties' intention is a question of fact, while the legal consequence of that intention is a question of law. *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 56, 64, 277 P.3d 18 (2012). We apply principles of contract interpretation when interpreting deeds. *Edmonson v. Popchoi*, 155 Wn. App. 376, 386, 228 P.3d 780 (2010). "[D]eeds are construed to give effect to the intentions of the parties, and particular attention is given to the intent of the grantor when discerning the meaning of the entire document." *Zunino v. Rajewski*, 140 Wn. App. 215, 222, 165 P.3d 57 (2007). Generally, we glean the parties' intentions from the language of the deed as a whole, giving meaning to "'every word if reasonably possible.'" *Newport Yacht*, 168 Wn. App. at 64 (quoting *Hodgins v. State*, 9 Wn. App. 486, 492, 513 P.2d 304 (1973)).

B.      The 2006 Deed is Ambiguous

Ambiguity is a question of law. *Hoglund v. Omak Wood Prods., Inc.*, 81 Wn. App. 501, 504, 914 P.2d 1197 (1996). A statement is ambiguous if it is capable of two or more meanings. *Newport Yacht*, 168 Wn. App. at 66. A deed is ambiguous if, reading the deed as a whole, two or more reasonable interpretations are possible. *GMAC v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 135, 317 P.3d 1074, *review denied*, 181 Wn.2d 1008, 335 P.3d 941 (2014). Here, the language of the 2006 deed is capable of two or more reasonable interpretations.

11

To determine which tidelands were conveyed in the 2006 deed requires us to interpret the phrase, "and as conveyed in Parcel J of said deed, volume 997, page 242 (Fee No. 840924042)." CP at 103. This phrase is susceptible to more than one meaning. It could refer to only the tidelands situated in front of, adjacent to, or abutting Parcel A or it could refer to separate tidelands in addition to the tidelands situated in front of, adjacent to, or abutting Parcel A.

As to the former interpretation, the phrase could simply mean that the tidelands adjacent to Parcel A were *also* conveyed in Parcel J, and does not include any tidelands other than those adjacent to Parcel A. In that sense, the phrase "and as conveyed in Parcel J" merely represents an attempt to include all conceivable tidelands associated with or near Parcel A as part of the conveyance of the uplands. CP at 103. Accordingly, the absence of reference to tidelands in the Parcel B description could mean that the Parcel B tidelands were not conveyed.

But, as to the latter interpretation, in light of the history of Parcel J as provided by Hampton, it is reasonable that Parcel J describes *all* of the tidelands Terra Firma owned as conveyed to Radakovich I in 1987 by International Paper Reality Corporation, except some tidelands that had been conveyed to other parties. Because it is undisputed that Terra Firma already owned the land comprising the Parcel B tidelands as a result of the 1987 conveyance, its later conveyance of the tidelands "as described in Parcel J" could include the disputed portion of tidelands adjacent to Parcel B, separate and distinct from those tidelands adjacent to Parcel A.

By giving meaning to every word in the 2006 deed, it is susceptible to at least two reasonable interpretations. Therefore, the 2006 deed is ambiguous.

III.    EXTRINSIC EVIDENCE

A.    Admissibility of Extrinsic Evidence

Extrinsic evidence will not be considered where the plain language of a deed is unambiguous. *Newport Yacht*, 168 Wn. App. at 64. But, where ambiguity exists, extrinsic evidence is admissible to determine the parties' intent. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). "Extrinsic evidence is to be used to illuminate what was written, not what was intended to be written." *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 697, 974 P.2d 836 (1999). However, admissible extrinsic evidence does not include:

- Evidence of a party's unilateral or subjective intent as to the meaning of a contract word or term;
- Evidence that would show an intention independent of the instrument; or
- Evidence that would vary, contradict or modify the written word.

*Hollis*, 137 Wn.2d at 695.

While the ultimate question is the parties' intention at the time they executed the deed, we may consider the parties' subsequent actions to reflect their intent at the time of execution. *King County v. Hanson Inv. Co.*, 34 Wn.2d 112, 126, 208 P.2d 113 (1949). As such,

"[w]here a deed is of doubtful meaning, or the language used is ambiguous, the construction given by the parties themselves, as elucidated by their conduct or admissions, will be deemed the true one, unless the contrary is shown. So, where all the parties have acted on a particular construction, such construction should be followed unless it is forbidden by some positive rule of law."

*Hanson*, 34 Wn.2d at 126 (quoting 26 C.J.S. *Deed* § 93, at 346 (1941)). We will consider "the circumstances of the transaction and the subsequent conduct of the parties in determining their intent at the time the deed was executed." *Newport Yacht*, 168 Wn. App. at 65. Construing a deed against the drafter is not necessary if we can determine the parties' intent. *Forest Mktg. Enters., Inc. v. Dep't of Nat. Res.*, 125 Wn. App. 126, 133, 104 P.3d 40 (2005).

Keystone moved the trial court to strike all extrinsic evidence and argues on appeal that because the 2006 deed is not ambiguous, the trial court erred when it considered any extrinsic evidence to determine the parties' intent regarding conveyance of the Parcel B tidelands. We disagree. Because the 2006 deed is ambiguous and we employ a de novo standard of review, both this court and the trial court may consider extrinsic evidence, including the parties' subsequent conduct, to determine Wilson's and Terra Firma's intent regarding the 2006 conveyance of the Parcel B tidelands.

Before we can properly analyze the extrinsic evidence, we must first resolve Keystone's objections to evidence. CR 56(e) governs the use of affidavits[4] for purposes of summary judgment. The rule requires that an affidavit in support of summary judgment shall (1) "be made on personal knowledge," (2) "set forth such facts as would be admissible in evidence," and (3) "show affirmatively that the affiant is competent to testify." CR 56(e); *Hill v. Sacred Heart Med. Ctr.*, 143 Wn. App. 438, 449, 177 P.3d 1152 (2008). But "'evidence may be presented in affidavits by reference to other sworn statements in the record such as depositions and other affidavits.'" *Hill*, 143 Wn. App. at 449 (quoting *Mostrom v. Pettibon*, 25 Wn. App. 158, 162, 607 P.2d 864 (1980)). Ordinarily, we review a trial court's evidentiary rulings for abuse of discretion, but we review such rulings made in conjunction with a summary judgment motion de novo. *Davis v. Baugh Indus. Contractors, Inc.*, 159 Wn.2d 413, 416, 150 P.3d 545 (2007)).

In his affidavit supporting summary judgment, Wilson made a number of statements that Keystone argues are not based on personal knowledge, are inadmissible hearsay, or are not facts. Keystone argues that the trial court erred when it considered Wilson's declaration that he paid taxes on the Parcel B tidelands because it is inadmissible hearsay and Wilson lacked personal

---

[4] We use the terms affidavit and declaration interchangeably. *See* GR 13.

knowledge. Hearsay is an out-of-court statement offered in court to prove the truth of the statement. ER 801(c). Wilson's statement is not an out-of-court statement. It is a declaration offered in court. Therefore, it is not hearsay. Generally, a witness's statement must be based on personal knowledge of the matter. ER 602. Here, Wilson's declaration contains the tax appraisal provided to him by the Radakoviches which includes the Parcel B tidelands in tax parcel 714 (Parcel B in the 2006 deed). Because this evidence supports a finding that Wilson has personal knowledge of the matter, his statement is admissible.

Keystone next argues that any statements by the Radakoviches made after completion of the 2006 deed are inadmissible hearsay. However, Keystone fails to identify the specific statements to which it objects. Clearly, not all of the statements are hearsay. We do not consider arguments unsupported by citation to the record. RAP 10.3(a)(5); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Keystone also argues that the doctrine of merger by deed applies to exclude consideration of the purchase and sale agreement. "The general rule is that provisions of a real estate purchase and sale agreement merge into the deed." *Deep Water Brewing, LLC v. Fairway Res. Ltd.*, 152 Wn. App. 229, 252, 215 P.3d 990 (2009). However, the intent of the parties determines whether the terms of a purchase or sale agreement merge into the deed. *Deep Water Brewing*, 152 Wn. App. at 252. "'[W]here the intent of the parties is not clearly expressed in a deed, courts may consider parol evidence. In order to determine the intent of the parties, extrinsic evidence is admissible as to the entire circumstances under which a contract is made.'" *Deep Water Brewing*, 152 Wn.2d at 252 (quoting *Harris v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 742, 844 P.2d 1006 (1993)). A purchase and sale agreement "may be considered as some evidence of the circumstances of the parties at the time of the grant." *Harris*, 120 Wn.2d at 742. Here, because

the 2006 deed is ambiguous, we may consider the purchase and sale agreement to determine the parties' intent.

Keystone additionally challenges a number of statements in Wilson's and Krehbiel's declarations. For example, Keystone argues that the trial court erred when it considered Wilson's statements concerning the relationship between Radakovich I and Keystone because that relationship is not relevant. In his declaration, Wilson stated that Radakovich I and Van Vessem, Keystone's manager, are close friends. Notwithstanding Keystone's contention that the trial court should have stricken this statement, it was unnecessary to do so because the statement had no material effect on the determination of the issues where other evidence provided similar information. *See Guntheroth v. Rodaway*, 107 Wn.2d 170, 178, 727 P.2d 982 (1986). Here, we have reviewed the challenged statements and they either have no bearing on the issue or they have no material effect on the determination of the issues. Some of the challenged statements are merely cumulative. Therefore, although the trial court could have stricken some of the challenged portions, it was unnecessary and there is no error.

B.     The Parties Intended the 2006 Deed to Convey the Parcel B Tidelands

The extrinsic evidence evinces the parties' intent to convey the Parcel B tidelands. *See Newport Yacht*, 168 Wn. App. at 65. The tax appraisal the Radakoviches provided to Wilson includes the Parcel B tidelands. The purchase and sale agreement also demonstrates that Terra Firma intended to convey the Parcel B tidelands. Terra Firma promised Wilson a minimum of 20 acres, and that acreage can only be achieved by inclusion of the Parcel B tidelands in the conveyance. Terra Firma did not reserve any tidelands in the purchase and sale agreement. Prior to signing the 2006 deed, Radakovich II advised Wilson that Wilson may later negotiate with the Port "on the tidelands." CP at 95.

Furthermore, the parties' conduct and admissions following the 2006 deed also demonstrate that the parties intended to convey the Parcel B tidelands to Wilson. *See Hanson*, 34 Wn.2d at 126. Wilson and the Radakoviches acted as if the 2006 deed conveyed the Parcel B tidelands to Wilson. Wilson paid taxes for the complete tax parcels, which included the Parcel B tidelands. He enjoyed uninterrupted use of the Parcel B tidelands from 2006 to 2012 and used the Parcels to operate his business.

Radakovich II made repeated offers to purchase the tidelands from Wilson. One of these offers included a map depicting the Parcel B tidelands that Radakovich II wanted to repurchase. Radakovich II referred to Wilson as the owner of the tidelands during communications with third parties. In the 2008 litigation, Radakovich I and II did not assert any ownership interest in any tidelands in their own capacity or as representatives of Terra Firma.

Finally, as recently as 2011, Radakovich I claimed no ownership interest in the Parcel B tidelands. Radakovich I did not list the Parcel B tidelands in his bankruptcy schedules. When the Port presented Radakovich I with an offer for the Parcel B tidelands, he "responded that he no longer owned the tidelands." CP at 210.

In reviewing the evidence *de novo*, there is no genuine issue of material fact in dispute. Keystone argues that Cowlitz County's creation of a new tax parcel for the Parcel B tidelands creates a genuine issue of material fact as to whether Wilson paid taxes on the Parcel B tidelands. We disagree. The affirmative evidence demonstrates that Wilson paid taxes on the Parcel B tidelands from 2006 to 2011. The creation of a new tax lot does not refute this evidence. This evidence does not create a genuine issue of material fact.

Keystone argues that statements referencing Wilson's ownership of the tidelands made by Radakovich II during the 2006 deed negotiations and by Radakovich I in November 2011 tend to show only what they intended to write in the 2006 deed, not what they intended to convey by the deed. But Radakovich II's statements demonstrate that Terra Firma did not intend to retain any ownership rights in the Parcel B tidelands. And Radakovich I's denial of ownership of the Parcel B tidelands demonstrates that he did not believe Terra Firma retained any ownership right to the Parcel B tidelands following the 2006 deed to Wilson. In turn, this evidence demonstrates that Terra Firma intended to convey the Parcel B tidelands to Wilson in the 2006 deed.

Keystone also claims that "Wilson waived any right to claim" Parcel B other than what is described in the deed. Br. of Appellant at 38. But Barlow Point and the Port make no such claim of rights outside of the deed. Wilson's claim of right to the tidelands is based solely on what was conveyed in the 2006 deed. Because the deed is ambiguous, extrinsic evidence is admissible to determine what the deed says. This extrinsic evidence is used only to interpret the deed and does not create a separate claim outside of the deed itself. Furthermore, Keystone fails to cite any authority for this argument. We do not consider arguments that are unsupported by citation to authority. RAP 10.3(a)(5); *Cowiche Canyon*, 118 Wn.2d at 809.

There are no material issues of fact in dispute. Viewing the evidence in the light most favorable to Keystone, reasonable persons could reach but one conclusion that the parties intended to convey the Parcel B tidelands to Wilson in the 2006 deed. We affirm.

Because we affirm on the above grounds, we do not reach the issue of whether the 2006 deed conveyed the disputed tidelands to Wilson pursuant to the *Wardell* doctrine.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, C.J.

Bjorgen, J.